**ROYALL NATIONAL BANK OF PALESTINE, TEXAS**

v.

**The UNITED STATES.**

No. 30–76.

United States Court of Claims.

Dec. 14, 1977.

A. D. Henderson, Palestine, Tex., attorney of record, for plaintiff; Allen Weed and Shank, Irwin, Conant, Williamson & Grevelle, Dallas, Tex., of counsel.

Stephen G. Anderson, Washington, D.C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D.C., for defendant.

Before DAVIS, KUNZIG and BENNETT, JJ.

OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed September 14, 1977, requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Senior Trial Judge Mastin G. White, filed August 5, 1977, pursuant to Rule 134(h) plaintiff having failed to file a notice of intention to except or exception thereto and the time for so filing pursuant to the Rules of the Court having expired. Upon consideration thereof, without oral argument, since the court agrees with the said recommended decision as hereinafter set forth *, it hereby grants defendant's motion, filed September 14, 1977, and affirms and adopts the decision as the basis for its judgment in this case. Accordingly, it is concluded that plaintiff is not entitled to recover and the petition is dismissed.

---

* Whereas the court adopts the trial judge's separate findings of fact, which are set forth in his report filed August 5, 1977, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

## OPINION OF TRIAL JUDGE

WHITE, Senior Trial Judge:

This action by the plaintiff, Royall National Bank of Palestine, Texas, is based upon the refusal of the Small Business Administration ("SBA") to purchase the guaranteed portion of an SBA-approved loan. The loan was in the amount of $125,000 and was made by the plaintiff on June 14, 1972, with the approval of the SBA, to a now-bankrupt company known as Consolidated Data Systems, Inc. ("CDS"). At the time when the loan was made, CDS was engaged in the electronic data processing business at Palestine, Texas.

The authorization from the SBA to the plaintiff for the making of the loan to CDS stated that the SBA would guarantee 90 percent of the loan.

Some 3 years before the plaintiff made the SBA-approved loan to CDS, the plaintiff and the SBA entered into a blanket loan guaranty agreement. This was a standard form of contract which SBA entered into with numerous banks throughout the country. In substance, the agreement outlined the circumstances under which the SBA would share the risk of default on SBA-approved loans made by the lending bank.

Of particular interest in the present case is paragraph 7 of the blanket loan guaranty agreement between the plaintiff and the SBA, providing in part as follows:

> 7. Notice of Borrower's Default and Demand for Purchase. Lender shall have the right to make demand in writing for the purchase by SBA of its guaranteed percentage of any loan guaranteed hereunder, provided that such loan is in default * * * and such default has continued for not less than 60 days. * * * Default means nonpayment of principal or interest on the due date * * *. Lender shall notify SBA in writing within 30 days of any such default in payment * * *, and such notification to SBA shall be a condition precedent to the Lender's right to demand purchase by SBA.

CDS was to repay the $125,000 loan, together with interest, in consecutive monthly installments on the 14th day of each month, beginning August 14, 1972. From the beginning, however, CDS was irregular in making the prescribed monthly payments. For example, the August 1972 payment was made on August 25 rather than August 14; the December 1972 payment was not made until January 8, 1973; the January 1973 payment was made on January 29 rather than January 14; the February 1973 payment was not made until March 23; and the March 1973 payment was not made until April 18. The April 1973 payment was never made; and, indeed, CDS did not make any further payment on the indebtedness after making the March payment more than a month late, on April 18, 1973. At that time, more than $100,000 of the principal indebtedness remained unpaid.

It appears, from the recital in the preceding paragraph, that CDS was actually in default at all times after December 14, 1972, when the December installment on the indebtedness became due and was not paid until January 8, 1973, and CDS was also late thereafter in paying the January, February, and March installments. In any event, there can be no question about CDS being continually in default after April 14, 1973, when the April installment became due and was never paid, and CDS did not make any payments for subsequent months as they became due.

Notwithstanding the default by CDS, the plaintiff did not give the SBA written notice of such default until November, 1, 1973.

The SBA did have actual knowledge of CDS's default prior to the receipt of the written notice from the plaintiff. The actual knowledge was not acquired, however, until July 13, 1973, when an SBA official called the plaintiff's president on the telephone, stated that he had heard from another source a rumor that CDS was contemplating bankruptcy proceedings, and inquired about the status of the $125,000 loan to CDS. The plaintiff's president then informed the SBA official that CDS was in default on the monthly payments. This

was the first information received by the SBA concerning CDS's default. Thus, the SBA was unaware of CDS's default until approximately 3 months had elapsed after CDS stopped making payments on the loan—and CDS's final payment was more than a month overdue when made.

The financial condition of CDS seriously deteriorated between the company's default on the $125,000 loan and the date when the SBA received actual knowledge of the default. Even through May 1973, one branch of CDS was showing a profit; and the company was not forced to stop operations until later, in June 1973. By mid-July of 1973, however, CDS's assets were worth only $8,500, and the company had a negative net worth of $80,000.

On November 9, 1973, CDS commenced bankruptcy proceedings in the United States District Court for the Eastern District of Texas; and the company was adjudicated a bankrupt 4 days later. The plaintiff did not receive any proceeds from the referee in bankruptcy as a result of those proceedings.

The evidence in the record, as summarized briefly up to this point, plainly shows that CDS defaulted on the $125,000 SBA-approved loan and remained in default continually after April 14, 1973, at the latest; that the plaintiff, as the lender, did not notify the SBA in writing (or otherwise) within 30 days of such default; and that the SBA was unaware of the default until long after the expiration of the 30-day period immediately following the default.

The defendant relies upon the portion of paragraph 7 of the blanket loan guaranty agreement between the SBA and the plaintiff which declares in plain language that "such notification to SBA [in writing within 30 days] shall be a condition precedent to the Lender's right to demand purchase by SBA" of the guaranteed portion of an SBA-approved loan. The defendant argues that as the plaintiff failed to give the required notice of default, which was a condition precedent to the creation of any obligation on the part of the SBA to purchase the guaranteed portion of the $125,000 loan to CDS, the present action must necessarily fail, without regard to other factors.

The defendant's position is supported by 5 Williston Contracts, § 666A (3d ed. 1961), which states in part that "A precedent condition in a contract * * * must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies."

The plaintiff's response to the defense previously outlined is to contend (incorrectly) that CDS was not in default until May 14, 1973, and to contend further (also incorrectly) that the plaintiff informed the SBA of such default on June 13, 1973, or within the prescribed 30-day period. As previously stated in this opinion, CDS's default occurred on April 14, 1973, at the latest, and the plaintiff's first notification to the SBA of such default was given on July 13, 1973, in response to an inquiry from the SBA, and the notification was oral in nature.

As the SBA's promise to purchase the guaranteed portion of the loan to CDS in the event of a default was conditioned upon receiving from the plaintiff a written notice of such default within 30 days of its occurrence, and as the condition precedent was not fulfilled, no obligation arose under the SBA's promise.

The conclusion just stated makes it unnecessary to consider the defendant's alternative defense to the effect that the plaintiff breached the contract between the SBA and the plaintiff in various material respects, thereby excusing the defendant from discharging its guaranty obligation in any event.

It necessarily follows that the plaintiff is not entitled to recover, and that the petition should be dismissed.

## CONCLUSION OF LAW

Upon the trial judge's findings and opinion, which are adopted by the court, the court concludes as a matter of law that the plaintiff is not entitled to recover, and the petition is therefore dismissed.