Clancy CUMMINGS, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 725–86–C.

United States Claims Court.

June 23, 1989.

Dan W. Shieder, Jr., Dallas, Tex., for plaintiff.

Carol Park–Conroy, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen and M. Susan Burnett, Washington, D.C., for defendant. Martha H. Degraff, Dept. of Agr., of counsel.

## OPINION AND ORDER

TURNER, Judge.

Clancy Cummings, who had made loan and security agreements with the U.S. Department of Agriculture's Farmers Home Administration (FmHA) in 1979, instituted suit on November 18, 1986. His claims for damages of not less than seven million dollars rest upon assertions that FmHA wrongfully delayed closing of his loans in 1979 and wrongfully denied his applications for additional loans in 1980.

On February 9, 1987, defendant filed a motion to dismiss or in the alternative for summary judgment. Because items outside the pleadings have been submitted by both parties for consideration in connection with the motion, it is deemed to be a motion for summary judgment. *See* RUSCC 12(c), 56. This opinion addresses defendant's motion.

All but one of plaintiff's claims are barred by the applicable statute of limitations. With respect to the remaining claim, it is concluded that there exists no triable issue and that defendant is entitled to judgment as a matter of law.

## I

At the time of the events giving rise to this suit, Clancy Cummings was a farmer and rancher who resided in Dallam County, Texas. In September 1978, Cummings filed an application with FmHA for an emergency loan to pay for losses caused by a drought, to refinance his debts and to pay his farm operating expenses. The application process resulted in FmHA's authorization and approval of four loans totalling $7,338,030 in December 1978. Secured by Cummings' equipment, crops, cattle and real estate, the four loans were closed on March 2, 1979.

At the time of closing, plaintiff executed four promissory notes and two security agreements dated March 2, 1979, and a Deed of Trust dated March 1, 1979. The documents established the following loan repayment schedule:

| Principal Amount | Int. Rate | Payments | Payment Frequency | Date Final Payment Due |
|---|---|---|---|---|
| $ 3,490 | 3.0% | $ 1,789 | 2 semi-ann. | 03/02/80 |
| $ 670,000 | 8.5% | $ 130,898 | 8 annual | 03/02/86 |
| $1,632,000 | 8.5% | $ 144,253[1] | 40 annual | 03/02/19 |
| $5,032,540 | 8.5% | $2,694,994 | 2 semi-ann. | 03/02/80 |

1. The first payment on this loan was to be in the amount of $115,917. Def. App. at 32.

Def. App. at 23–35. Plaintiff's actual performance of his repayment obligations differed significantly from that to which he had agreed. His first payment, for $2,959.51, was not made until March 26, 1980; yet the parties' agreements had called for two of the four loans to be paid in full by March 2, 1980. Cummings' subsequent payments were as follows:

| | |
|---|---|
| July 11, 1980 | $1,303,915.56 |
| July 16, 1980 | 286,967.72 |
| July 31, 1980 | 401,281.85 |
| August 11, 1980 | 185,634.99 |
| August 12, 1980 | 843,781.06 |
| August 15, 1980 | 1,295,920.21 |
| August 25, 1980 | 169,966.15 |
| Total | $4,490,427.05 |

No further payments appear in the record. As of October 14, 1980, Cummings' total outstanding debt, including interest, stood at $3,713,398.91 (Def. App. at 108–9).[2]

In addition to their provisions concerning repayment, the parties' contracts contained this language concerning the possibility of future loans:

> Secured Party will make or insure future advances to Debtor to enable him to raise or harvest farm crops or raise livestock or other animals, provided funds are available and the Debtor meets all then current requirements imposed by regulations of the Secured Party.

Def. App. at 45, 52.[3] Also on the subject of future loans, Cummings asserts that his original loan application included "a required three-year cash flow projection of future income and expenses" (Affidavit of Clancy Cummings at 3) which, he asserts, constituted further evidence that the parties' agreement envisioned additional loans to plaintiff.

The loan arrangement also comprised an operating plan for Cummings' farm and cattle enterprise. The primary income-producing portion of the plan concerned Cummings' cattle. The Farm and Home Plan (FHP) which Cummings had submitted

with his loan application proposed using some of the loan proceeds for the December 1978 purchase of 6,000 steers, 5,880 of which would be sold in June 1979, and the June 1979 purchase of another 6,000 steers, of which another 5,880 would be sold in December 1979. Def. App. at 9. The proceeds from these sales, projected at $5,711,009, were to be applied to repayment of the loans. *Id.*

Again, however, actual practice deviated from the parties' agreed-upon course. In late October 1979, Cummings reported to FmHA that he had not yet sold any cattle and that he would not have enough cattle ready to sell in time to make his January 1980 loan payments. Def. App. at 55. On December 20, 1979, FmHA informed Cummings that "the original plan should be followed" and instructed him to sell all his cattle by January 15, 1980 and apply the proceeds to his loan debt. Def. App. at 58. Cummings responded by questioning the business sense of this course of action and urging that the reason the cattle were not yet ready to sell was that the loans had been closed late. Def. App. at 61–2. Ultimately, the parties agreed that Cummings would sell the heaviest cattle in early 1980 and use the proceeds to finish the remainder, some of which would be placed in a commercial feedlot. Def. App. at 66.

The parties' relationship suffered further acrimony as a result of the federal investigation, indictment and trial of plaintiff on charges of making false statements on his loan application. The investigation began soon after the loans were closed and was, in Cummings' view, "instigated by false charges by [his] ex-wife and perhaps some other persons." Pl. App. at 25. He was tried and acquitted in September 1980 in the U.S. District Court at Amarillo.

While the investigation was pending, Cummings twice applied to FmHA for addi-

---

**2.** Late in 1980 or early in 1981, Cummings moved to Missouri. Thereafter, the FmHA decided to sell Cummings' farm equipment and hired a caretaker for his farm as it was being vandalized. Def. App. at 17–18. The equipment was sold in May 1982 for net proceeds of $286,386.19. Def. App. at 124. It appears from the record that as of the time this suit was filed, the remaining loan security had not yet been sold.

However, because Cummings failed to pay taxes on the real estate, the government paid taxes thereon totalling $54,306.23 through 1985. Def. App. at 160.

**3.** The language quoted in text appears at ¶ IV–J of the security agreements. Def. App. at 45, 52.

tional loans and was twice refused. In its first refusal FmHA's County Committee[4] made reference to the pending investigation. Def. App. at 75. Cummings now asserts that during this period FmHA officials represented to him that he would be given a loan if acquitted.[5] Despite this alleged assurance, Cummings' three post-acquittal loan applications were all denied.[6] In none of these denials did the County Committee cite Cummings' investigation, indictment or trial as reasons for its action. Instead, on each occasion the Committee stated that Cummings' (1) "unsatisfactory" past performance, (2) "lack of management ability and industry necessary to carry out [the] proposed farming operation to assure [a] reasonable prospect of success" and (3) "lack of repayment ability and reliability" were the reasons for denial (Def. App. at 104, 115).

## II

In his complaint, Cummings asserts that FmHA wrongfully delayed the closing of his loans so that by the time the loan funds were received the most opportune time for buying and holding cattle for resale had passed. Plaintiff further alleges that in denying his applications for additional loans, defendant breached its express and implied contractual obligations. Moreover, Cummings alleges that FmHA violated its own regulations by allowing impermissible considerations to enter the loan evaluation process. He seeks damages in excess of seven million dollars.

In its motion to dismiss or in the alternative for summary judgment, defendant urges that all of plaintiff's claims are time-barred. Alternatively, defendant argues that FmHA did not and could not enter into an unconditional contractual obligation to make additional loans to plaintiff. Finally,

the government asserts that FmHA's actions in denying plaintiff's loan applications were wholly in accordance with its regulations.

## III

In *Smithson v. United States*, 847 F.2d 791, 792–93 (Fed.Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989), and *Dahl v. United States*, 695 F.2d 1373, 1377–79 (Fed.Cir.1982), the Federal Circuit described the circumstances and procedures under which FmHA makes low-interest loans to farmers who are unable to obtain credit from commercial sources. Familiarity with those discussions is presumed.

## A

It is well-settled that the United States "is immune from suit save as it consents to be sued." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *accord United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). This court's six-year statute of limitations, 28 U.S.C. § 2501, has been held to constitute a "condition" on the sovereign's consent to suit. *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Accordingly, claims which first accrued more than six years prior to filing are "beyond the court's power to hear and decide." *Mitchell v. United States,* 10 Cl.Ct. 63, 67, *modified,* 10 Cl.Ct. 787 (1986).

All but one of plaintiff's claims fall within this time-barred category. His claim for undue delay in loan closing first accrued, at the latest, on March 2, 1979 and expired on March 2, 1985, well before the November 18, 1986 filing of this action.[7]

---

4. Established by the Consolidated Farm and Rural Development Act of 1961 (at 7 U.S.C. § 1982 (1976)), County Committees each consist of three local residents who are charged with certifying the eligibility of FmHA applicants.

5. In a February 29, 1980 letter to Cummings, County Supervisor Larry Owens stated, "It is my understanding that a loan would not be approved until the Grand Jury completes their

investigation about possible irregularities in connection with your loan." Def. App. at 66.

6. Only one of the denials occurred within six years of the filing of this action.

7. In any event, the Federal Circuit has recently held that "any undue delay by FmHA in making [a] loan ... is vindicable, if at all, only in a tort action of which the Claims Court would have no jurisdiction." *Smithson v. United States,* 847

Similarly, Cummings' claims with respect to four of FmHA's five denials of his applications for additional loans first accrued more than six years before this suit was filed.

■ However, insofar as it relates to FmHA's denial of his November 20, 1980 loan application, Cummings' complaint survives the government's time-bar defense. Defendant's assertion that any claims related to this last application must be time-barred because they derive from contracts entered more than six years before the filing of the complaint is without merit. A breach of contract claim first accrues on the date of breach, not on the date the contract was formed. *Aktiebolaget Bofors v. United States*, 139 Ct.Cl. 642, 644, 153 F.Supp. 397, 399 (1957). Further, a claim asserting wrongful denial of an FmHA loan does not first accrue until the date that plaintiff is notified of the denial. *Kinsey v. United States*, 13 Cl.Ct. 585, 586 (1987), *aff'd* 852 F.2d 556 (Fed.Cir.1988); *Albemarle Bank & Trust Co. v. United States*, 12 Cl.Ct. 704, 706 (1987), *aff'd*, 845 F.2d 1034 (Fed.Cir.1988).

### B

In seeking recovery based on FmHA's denial of his November 20, 1980 loan application, Cummings relies upon four alternative theories. These theories are that FmHA breached (1) its own regulations, (2) an express written contract, (3) an express oral contract, and (4) an implied-in-fact contract. Each of these theories suffers mortal defects and must be rejected as a matter of law.

■ Plaintiff asserts that FmHA violated its own regulations by allowing two impermissible factors to taint its consideration of his loan application: (1) the "personal animosity" of County Supervisor Owens and (2) the investigation, indictment and trial of plaintiff. Even if plaintiff could prove these regulatory violations (and we assume for purposes of this motion that he could), no recovery for the same could be had in this court. It is well-established

that in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government. 28 U.S.C. § 1491(a)(1); *Duncan v. United States*, 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied*, 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); *Morgan v. United States*, 12 Cl.Ct. 247, 253 (1987). Here, because of the conditional nature of the right it creates, neither the statute authorizing FmHA to provide additional loan funds nor its implementing regulations could fairly be interpreted as money-mandating. *Hanson v. United States*, 13 Cl.Ct. 519, 526–30 (1987), *aff'd*, 861 F.2d 728 (Fed.Cir.1988). Moreover, the Federal Circuit has recently characterized a claim for alleged violation of FmHA regulations in a similar context as "a tort claim against the Government for misfeasance and misconduct" and added that such a claim "is, of course, outside the Claims Court's jurisdiction." *Smithson v. United States*, 847 F.2d at 794.

■ Even assuming *arguendo* that pertinent FmHA regulations could fairly be interpreted to mandate the payment of compensation for damages due to government violation, the record before the court is not sufficient to create a triable issue concerning the existence of any such violation. The denial of FmHA loan funds falls within the type of agency action "committed to agency discretion by law." *Tuepker v. Farmers Home Admin.*, 708 F.2d 1329, 1331 (8th Cir.1983) (citation omitted). The Consolidated Farm and Rural Development Act directs, for example, that the FmHA may make loans only to those borrowers who have the "experience and resources necessary to assure a reasonable prospect for successful operation." 7 U.S.C. § 1961(a) (Supp. IV 1980). The Act requires the County Committee to certify not only that an applicant meets loan eligibility requirements but also that he has "the character, industry, and ability to carry out the proposed operations, and will ... hon-

F.2d 791, 795 (Fed.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

estly endeavor to carry out his undertakings and obligations." 7 U.S.C. § 1983(b) (Supp. IV 1980). Such determinations are inherently discretionary. Moreover, the Federal Circuit has held that FmHA personnel are duty-bound "to make certain the money loaned by the United States will be recouped" and are not required "to commit additional funds to a hopelessly losing venture." *Dahl v. United States*, 695 F.2d at 1381.

Plaintiff simply fails to set forth a triable issue as to abuse by FmHA of its broad statutory discretion. Given plaintiff's heavy debt load and his inability to adhere to his FHP, the County Committee had a reasoned basis to deny plaintiff's loan application.

■ Nor can plaintiff demonstrate the existence of triable issues with respect to his contract theories. Turning first to the parties' written contracts, an examination of those contracts reveals that they established only a *conditional* FmHA obligation to loan Cummings additional sums. That is, FmHA's obligation to lend Cummings additional monies depended upon Cummings' satisfaction of a particular condition. *See, e.g., Royall Nat'l Bank v. United States*, 215 Ct.Cl. 349, 353, 566 F.2d 1151, 1153 (1977). The condition, contained in ¶ IV–J of the security agreements, was that Cummings had to meet "all then current requirements imposed by [FmHA] regulations" at the time he filed any application for an additional loan. It is abundantly clear from the record that Cummings did not meet all requirements imposed by FmHA regulations at the time of his November 20, 1980 loan application. Most significantly, he was not certified as eligible for an FmHA loan by the County Committee as required by 7 U.S.C. § 1983(b) (Supp. IV 1980) and 7 C.F.R. § 1910.4 (1981). As detailed above, the County Committee's refusal to certify plaintiff's eligibility could not be deemed improper.

■ Plaintiff attempts to avoid the failure-of-condition-precedent obstacle by asserting that the parties entered an *unconditional* contract for future loans. This alleged unconditional contract was based, alternatively, on verbal assurances given plaintiff, on portions of the parties' written contracts, and on the parties' conduct when they entered the written contracts.[8] But it is well established that liability of the United States under an express or implied-in-fact contract can be created only if the government actors whose conduct is relied upon had actual authority to bind the government. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). Parties dealing with the government are charged with knowledge of the statutes and regulations that govern their dealings and assume the risk of accurately ascertaining that officials with whom they deal possess authority to bind the government. *Id.*

■ Here, the County Committee's discretionary evaluation as to a loan applicant's eligibility is a *mandatory* procedure, *which FmHA officials do not have the authority to predetermine or waive. See* 7 U.S.C. § 1983(b) (Supp. IV 1980) ("the Secretary shall require ... the County Committee to certify in writing that the applicant meets the eligibility requirements for the loan"); 7 C.F.R. § 1910.4(b) (1981) ("All farmer program applications are to be submitted to the County Committee for eligibility"). Thus, even if plaintiff could show the parties entered an unconditional agreement providing for future FmHA loans, such a contract would be unenforceable for lack of authority.

Finally, plaintiff's prayer for relief in excess of seven million dollars as compensation for the alleged contractual breaches is, in any event, a request for consequential rather than actual damages and thus beyond the court's power to grant. *Nelson v. United States*, 16 Cl.Ct. 510, 515–16 (1989).

## IV

For the reasons stated, defendant's motion for summary judgment is GRANTED.

---

8. With respect to this third basis, there can be no implied-in-fact contract where there exists an express contract covering the same subject. *Al-* *gonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 673, 428 F.2d 1241, 1255 (1970).

Judgment for defendant shall be entered accordingly.