**KALAMAZOO CONTRACTORS, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 96–31C.**

United States Court of Federal Claims.

Feb. 16, 1997.

---

Raymond C. Schultz, Kreis, Enderle, Callander & Hudgins, P.C., Kalamazoo, Michigan, attorney of record for plaintiff.

Lauren S. Moore, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General, attorneys of record for defendant.

## OPINION

HORN, Judge.

This case comes before the court on defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of jurisdiction over the subject matter or, alternatively, pursuant to RCFC 12(b)(4) for failure to state a claim upon which relief may be granted. Plaintiff's one count complaint alleges breach of contract against the defendant, the United States, acting through the General Services Administration (GSA), for defendant's alleged failure to pay a portion of the amount allegedly due under a contract, subsequent to the plaintiff's performance. After submission of briefs in the case, both parties waived oral argument.

## FACTS

On or about September 4, 1992, GSA began soliciting bids for various phases of construction work to be done on the Federal Building in Kalamazoo, Michigan, specifically identified as Project No. RMI 91009. One phase of the construction work involved the removal and replacement of a hydraulic elevator. On December 21, 1992, plaintiff Kalamazoo Contractors Inc. (Kalamazoo), a Michigan corporation, with its principal place of business located in Kalamazoo, Michigan, submitted a bid in the amount of $104,892.00 on the elevator improvement project. Plaintiff's bid was accepted by the defendant on April 21, 1993, and the parties entered into contract number GS–05P–92–GBC–0073. The contract at issue underwent several modifications, with associated cost adjustments, at the request of the defendant. The modifications and the cost adjustments are as follows:

| Modification # | Cost Adjustment |
| --- | --- |
| CE–5002 | ($5,866.00) |
| CE–5003 | $3,573.00 |
| CE–5004 | $3,009.00 |
| CE–5005 | $4,235.00 |
| CE–5006 | $2,342.45 |
| CE–5008 | $2,257.00 |
| CE–5009 | $ 789.25 |

The final contract price, including the above modifications and cost adjustments, was increased to $115,231.70.

The documents in the record reflect that on December 16, 1994 the contracting officer, W.R. Sonenberg, issued a letter which indicated that liquidated damages in the amount of $60.00 per day, for 186 days of delay, totaling $11,160.00, were to be assessed against the plaintiff under the contract at issue, and withheld from plaintiff's invoice requesting payment in the amount of $28,-567.60. The December 16, 1994 letter from the contracting officer states:

SUBJECT: Kalamazoo, Michigan, Federal Building & Courthouse, "Elevator Improvements", GS05P92 GBC0073, RMI91009

Enclosed is Payment Voucher No. 4 for the subject solicitation in the amount of $2,628.90. Although your invoice request was in the amount of $28,567.60, the Contracting Officer's Representative recommends assessing $11,160.00 for liquidated damages due to (186) days of delay.

FAR 52.212–5 states "If the contractor fails to complete the work within the time specified in the contract, or any extension, the contractor shall pay to the Government as liquidated damages, the sum of $60.00 (Sixty Dollars) for each day of delay." As a result, the liquidated damages total is $11,160.00.

At this time, you are given ten (10) days after receipt of this letter to provide this office with any documentation to the contrary you may have regarding this matter.

On December 21, 1994, in response to the contracting officer's December 16, 1994 letter, the plaintiff sent a letter to the contracting officer asserting that liquidated damages are not appropriate in the instant case. According to the plaintiff's letter, the delays in performance had been caused by contract modifications, and had been approved by Mr. Sonenberg's office. Plaintiff's December 21, 1994 letter states:

RE: Kalamazoo, Michigan, Federal Bldg & Courthouse "Elevator Improvements", GS05P92 GBC0073, RMI91009

This is in response to your letter which I received December 17, 1994, regarding the recommendation by the COR for liquidated damages due by Kalamazoo Contractors, Inc.

In your letter to Representative Fred Upton dated October 20, 1994, paragraph (6) states that the COR has informed your office that no time extension is applicable. I would like to call to your attention several GSA Forms 1137 (need for contract modification) which describe proposed modifications that were sent to me. I submitted those proposals, along with a statement for an extension of time, as was necessary. Those forms were returned to the COR as requested. I received signed approved PDL's from your office.

I received a PDL for CM–5003 dated August 25, 1994, which I received August 31, 1994. This contract modification was for increasing the width of Door # 2 from 3' to 3'6" to meet codes. In form 1137, item # 14 requested an extension of 40 days after your approval for this. This extends the contract time until October 10, 1994. This was approved by your office, signed by you.

I received a PDL for CM–5005 dated August 25, 1994, which I received August 31, 1994. This contract modification was for supplying electrical power for the elevator being installed. There was not sufficient power to operate the new elevator as shown on the blueprint. In form 1137, item # 14 requested an extension of 42 days after your approval. This extends the contract time until October 12, 1994. This too was approved by your office and signed by you.

Your punchlist requests that I complete CE–5006 and CE–5007. They are both dated in item # 13, December 1, 1994. CE–5006 requests an extension of 42 days after approval. CE–5007 requests an extension of 10 days after your approval. I have not received any response to these requests as of this date.

In your letter to Representative Fred Upton, in paragraph (5), you state that with construction contracts, it is not uncommon to incur change orders because of ADA requirements, latent conditions, and un-

foreseen site. conditions, as has been the case with this contract.

Furthermore, I faxed a letter (followed by hard copy) to the COR's attention dated October 14, 1994, requesting an inspection for substantial completion. As specified by the COR, to meet substantial completion per memo he faxed to me, the following three items must be met.

1) Elevator in operation

2) Door # 2 in operation

3) Door # 3 in operation

Although my request for inspection was dated and faxed on October 14, 1994, the inspection was not done until November 2, 1994.

I feel the attached documentation does prove to the contrary that liquidated damages are not in order on this contract.

In a letter dated February 7, 1995, Mr. Sonenberg, the contracting officer responded to the plaintiff's December 21, 1994 letter by indicating that he considered the delays to be a result of the plaintiff's untimely actions, and, therefore, he considered the delays not to be excusable. Mr. Sonenberg reaffirmed his position that the assessment of liquidated damages was fair and reasonable under the circumstances. The February 7, 1995 contracting officer's letter states:

SUBJECT: Kalamazoo, MI, Federal Courthouse,

"Elevator Improvements",

Contract: GS05–P92–GBC–0073, PCN: RMI 91009,

This letter is in response to your letter dated December 21, 1994, which is in response to our letter dated December 16, 1994, regarding liquidated damages assessed against the subject project and withheld from your payment requests.

Your original contract completion date was November 11, 1993. Your [sic] were issued two time extensions, the first for 150 days and the second for 24 days. These time extensions were granted as excusable delays for work done under contract modification CE 5002. All other work should have continued as originally scheduled. The two time extensions allowed you until April 29, 1994 to finish your work under contract modification CE 5002. Your work under contract modification CE 5002 was not complete and accepted until November 2, 1994.

The Contracting Officer's Representative has documented that the reason for your inexcusable delay is that you failed to follow the Government directive issued October 19, 1993, directing you to proceed with contract modification CE 5002 as "expeditiously as possible". All other contract modifications, with the exception of CE 5005, had nothing to do with work done under contract modification CE 5002.

The unforeseen site condition that prompted the need for contract modification CE 5005 should have been discovered long before November 11, 1993, your initial contract completion date. At the very least it should have been discovered by April 29, 1994, your revised contract completion date. Although the work done under contract modification CE 5005 was necessary to accept the work done under contract modification CE 5002, the work done under this portion of the contract should have proceeded at the original schedule and been completed by the original contract completion date of November 11, 1993. The unforeseen site condition was not discovered and brought to the Government's attention until June 20, 1994. Approximately two months after your revised contract completion date of April 29, 1994. It is therefore not an excusable delay.

In conclusion, I feel the assessment of liquidated damages to be fair and reasonable and to be deducted from your total contract price.

In its complaint filed in this court, plaintiff maintains that it has fully performed all of its duties and obligations under the terms of the contract. Plaintiff contends that the defendant, however, has not completed its obligations and has breached the contract by paying the plaintiff only $77,468.30, allegedly leaving a balance due to the plaintiff of $37,-763.40. The complaint requests the following relief:

WHEREFORE, Plaintiff respectfully requests that this court enter a judgment in its favor and against the Defendant for

damages in the amount of $37,763.40, and further award Plaintiff interest, costs and actual attorney fees incurred in having to enforce the parties [sic] agreement.

In the motion to dismiss, however, the defendant asserts that the plaintiff has failed to exhaust its administrative remedies by failing to submit a proper claim to the contracting officer for final decision, as required by the Contracts Disputes Act (CDA). 41 U.S.C. §§ 601–613 (1994). Therefore, the defendant argues that this court is without jurisdiction to consider the claim presented in plaintiff's complaint. Section 605(a) of the CDA, states that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1994).

According to the defendant, Kalamazoo's invoice, or as defendant characterizes it, plaintiff's routine request for payment, which was submitted to the defendant prior to the contracting officer's December 16, 1994 letter to the plaintiff, does not satisfy the definition of a proper claim under the CDA. The defendant also points out that even if the invoice could qualify as written notice to the contracting officer, the actual invoiced amount appears to have been $28,567.60, rather than $37,763.40, as requested in the complaint. Moreover, Kalamazoo's December 21, 1994 letter to the contracting officer, which takes issue with the contracting officer's decision to assess liquidated damages, makes no mention of the $37,763.40 amount. In fact, the plaintiff's December 21, 1994 letter expresses only Kalamazoo's disagreement with Mr. Sonenberg's decision to assess liquidated damages. Accordingly, the defendant contends that the amount requested in the complaint, $37,763.40, was not in dispute at the time the invoice, or routine request, was submitted to the contracting officer, or during the subsequent exchange of letters regarding the defendant's assessment of liquidated damages. The defendant contends that because the invoice and the letters do not request defendant to pay the specific dollar amount due as identified in the complaint, plaintiff has not satisfied the jurisdictional requirements of the CDA. Finally, the

defendant argues that Mr. Sonenberg's February 7, 1995 letter does not constitute a final decision, as contemplated by the CDA, because it only explains the defendant's intention to deduct liquidated damages from plaintiff's contract price.

Plaintiff, in its response to defendant's motion to dismiss, argues that it did submit a proper claim to the contracting officer of an amount in dispute, and that the contracting officer has issued a final decision in compliance with the terms of the CDA. Plaintiff relies on, and refers the court to, the series of correspondence exchanged between the plaintiff and the defendant, including the correspondence indicating that the contracting officer was planning to assess $11,160.00 in liquidated damages against the plaintiff. Plaintiff also argues that the invoice and individual letters of correspondence, taken together, confirm the existence of an amount in dispute, confirm the contracting officer's acknowledgment of the amount claimed, and are sufficient evidence of the contracting officer's denial of plaintiff's claims.

## DISCUSSION

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* at 747.

The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. Unit-*

*ed States,* 32 Fed.Cl. 689, 695 (1995), *dismissed by* 86 F.3d 1178 (Fed.Cir.1996). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746; *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Alaska v. United States,* 32 Fed.Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act merely confers jurisdiction on the Court of Federal Claims; it does not create a substantive right enforceable against the United States for money damages. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (*Mitchell I*); *United States v. Testan,* 424 U.S. 392, 398–99, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court, pursuant to 28 U.S.C. § 1491, in *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), as follows:

Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a

regulation which is cognizable here. The claim must, of course, be for money. *Id.* at 605 (citations omitted).

The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Under the CDA, jurisdiction over a claim vests in this court only after a contractor has submitted a "valid claim" in writing to the contracting officer, and the contracting officer has denied the claim, or failed to deny a claim under $100,000, within sixty (60) days. *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996) (citing *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed. Cir.1995) (*en banc* )); 41 U.S.C. § 605(c)(1) & (5). The Contract Disputes Act, however, leaves the term "valid claim" undefined. *See James M. Ellett Constr. Co. v. United States,* 93 F.3d at 1541–42.

■ Vouchers, invoices, and similar requests for payment, which are " 'submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance,' " are considered routine requests for payment. *James M. Ellett Constr. Co. v. United States,* 93 F.3d at 1542 (citing *Reflectone, Inc. v. Dalton,* 60 F.3d at 1577); FAR 33.201; *see Reflectone, Inc. v. Dalton,* 60 F.3d at 1575. According to the United States Court of Appeals for the Federal Circuit, a routine request for payment must meet four requirements in order to be considered a valid claim under the CDA. The request must be: (1) "in dispute" when submitted; (2) a written demand or assertion; (3) seeking as a matter of right; (4) the payment of money in a sum certain. *James M. Ellett Constr. Co., Inc. v. United States,* 93 F.3d at 1542 (citing 48 C.F.R. § 33.201 (1995); *Reflectone, Inc. v. Dalton,* 60 F.3d at 1575, 1577); *see also* FAR 33.201 (1994). Therefore, an invoice or other routine request for payment, that is not in dispute when submitted, is not a proper claim under the CDA. An invoice, however, "may be converted to a claim, by written notice to the contracting officer as provided in [FAR] 33.206(a), if it is disputed either as to liability

or amount or is not acted upon in a reasonable time." FAR 33.201 (1994).

The CDA also requires that the contractor "must submit in writing 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.' " *H.L. Smith, Inc. v. Dalton,* 49 F.3d 1563, 1565 (Fed.Cir.1995) (citing *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir. 1987)); *Sam Gray Enters. v. United States,* 32 Fed.Cl. 526, 529 (1995); *Pevar Co. v. United States,* 32 Fed.Cl. 822, 824 (1995). "To satisfy the CDA, a claim need not contain any particular language or conform to any specific format." *Pevar Co. v. United States,* 32 Fed.Cl. at 824; *see also Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1578 (Fed.Cir.1992). Moreover, "[w]hen appropriate, a series of letters can be read together to comprise a clear and unequivocal statement giving the contracting officer notice of the basis for the contractor's claim." *Executive Court Reporters, Inc. v. United States,* 29 Fed.Cl. 769, 774 (1993) (footnote omitted) (citing *Alliance Oil & Refining Co. v. United States,* 13 Cl.Ct. 496, 499 (1987), *aff'd mem.,* 856 F.2d 201 (Fed.Cir. 1988)), *appeal dismissed by* 22 F.3d 1106 (Fed.Cir.1994). Correspondence which indicates disagreement during negotiations, however, does not qualify as a valid CDA claim. *Executive Reporters, Inc. v. United States,* 29 Fed.Cl. at 774 (citations omitted).

The documents and correspondence alleged by plaintiff to constitute proof that a valid CDA claim was presented to the contracting officer appear to have been initiated by a routine invoice, not included in the record, which was submitted to the defendant agency. In the contracting officer's December 16, 1994 letter, which informed the plaintiff that the contracting officer intended to assess liquidated damages, Mr. Sonenberg does refer to an invoice for $28,567.60. The collection of correspondence also includes a response letter from Kalamazoo to the contracting officer, dated December 21, 1994, and a reply from the contracting officer to the plaintiff, dated February 7, 1995, reaffirming the contracting officer's decision to assess liquidated damages. Although the

government's December 16, 1994 letter to the plaintiff refers to the invoice from Kalamazoo Contractors, Inc., for $28,567.60, neither the plaintiff's December 21, 1995 letter, nor the government's February 7, 1995 letter mention the $37,763.40 amount claimed by the plaintiff in its complaint before this court. In fact, the discussion in plaintiff's December 21, 1995 letter is limited to contesting the propriety of assessing liquidated damages. By contrast, the above-captioned complaint, filed January 24, 1996, requests payment of $37,763.40, allegedly due for completed contract performance, but is silent on liquidated damages.

■ The issue, therefore, is whether the plaintiff's December 21, 1994 letter, or any other document in the record, provided adequate notification to the contracting officer that a dispute existed regarding the amount claimed in plaintiff's complaint, including any effect of the imposition of liquidated damages. The court finds that neither plaintiff's December 21, 1994 letter, nor any other document or correspondence before the court notified the contracting officer that the plaintiff was making a claim for $37,763.40, the amount requested in plaintiff's complaint. As noted above, the sole dispute raised in the plaintiff's December 21, 1994 letter was the propriety of the assessment of liquidated damages by the government. Although the contracting officer's December 16, 1994 letter to Kalamazoo Contractors, refers to an "invoice request" in the amount of $28,567.60, it is the sole reference in the record before the court regarding monies allegedly due to the plaintiff for contract performance. Nothing in the government's December 16, 1994 letter suggests that the contracting officer had received anything other than a routine request, or invoice for payment, from the plaintiff. Moreover, plaintiff has failed to plead facts which would support conversion of a routine invoice into a claim for monies allegedly due, by providing written notice to the contracting officer of a dispute regarding liability or amount pursuant to FAR 33.201 and 33.206(a). Consequently, the plaintiff has failed to plead or present any facts to support its argument that Kalamazoo made a valid CDA claim to the contracting officer for

the $37,763.40 that plaintiff claims is due under the contract.

If, in the case before this court, the claim for disputed liquidated damages could stand alone, independent of the claim for monies allegedly owed for performance under the contract, the plaintiff may have taken adequate procedural steps to perfect a valid claim under the CDA. The contracting officer's December 16, 1994 letter informed the plaintiff of the intent to impose liquidated damages. The letter closed with the following words:

> At this time, you are given ten (10) days after receipt of this letter to provide this office with any documentation to the contrary you may have regarding this matter.

In response to the defendant's December 16, 1994 letter, the plaintiff submitted the December 21, 1994 letter, which addressed the propriety of the imposition of liquidated damages against the plaintiff. The plaintiff's December 21, 1994 letter appears to have given the contracting officer adequate notice that Kalamazoo disputed the assessment of liquidated damages.

■ When, however, the subject of the complaint before the court is a claim for $37,763.40, money allegedly due to plaintiff for contract performance, the court cannot rely on the dispute over liquidated damages as the jurisdictional basis for the lawsuit. In the instant case, the plaintiff's complaint does not even mention a claim for liquidated damages. Moreover, the plaintiff's dispute regarding the liquidated damages assessment is integrally related to whether the plaintiff has a valid, underlying CDA claim for contract work performed. Although, the correspondence between Mr. Sonenberg and the plaintiff perhaps reflects a contracting officer's decision regarding the assessment of liquidated damages, the claim for $37,763.40 has not been previously presented to the contracting officer. Therefore, the court finds that it is premature to determine whether liquidated damages should be assessed against the plaintiff. The court will not rule on the liquidated damages offset issue, when the validity and amount of the underlying invoice remains in question, and

has not been properly submitted as a claim to the contracting officer.

## CONCLUSION

Based on the record before this court and the arguments presented in the briefs, the court finds that the plaintiff has not fulfilled the requirements of the CDA in order properly to invoke the jurisdiction of this court with regard to its claim for $37,763.40. Defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of jurisdiction over the subject matter is, hereby, **GRANTED.** The court **DISMISSES** the above-captioned case, **without prejudice.** If the plaintiff chooses to proceed, the plaintiff is directed to submit a proper claim to the contracting officer for a final decision on both the full amount alleged to be due for performance under the contract, and for a determination of whether or not liquidated damages should be assessed and deducted from any amounts found to be due. If, subsequent to the issuance of a contracting officer's final decision, the plaintiff continues to allege that additional payments are due under the contract, the plaintiff may file a new complaint before this court. The Clerk's Office is directed to waive any filing fee on a subsequent complaint filed in this court which encompasses the same facts as those asserted in the above-captioned case. The Clerk's Office is also directed to assign any subsequent filing by the plaintiff, which is based upon the facts raised in the above-captioned complaint, to the undersigned judge.

**IT IS SO ORDERED.**