**SAUL SUBSIDIARY II LIMITED PARTNERSHIP, Appellant,**

v.

**David J. BARRAM, Administrator, General Services Administration, Appellee.**

No. 99–1003.

United States Court of Appeals, Federal Circuit.

Aug. 11, 1999.

Don W. Blevins, of Washington, DC, argued for appellant.

John J. Field, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for appellee. With him on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director.

Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges a decision of the General Services Administration Board of Contract Appeals (Board) that the annual rent the government paid to the appellant in an extension of a real estate lease covered the costs of certain services the appellant provided. We affirm.

I

The basic facts are undisputed. In August 1987 the appellant Saul Subsidiary II Limited Partner's predecessor (both referred to as "Saul") leased to the federal government office space in a building it owned. This lease, on a standard government form, was for five years. (There were actually two leases, but since the legal issues under both are identical, we discuss only the one).

Paragraph three of the lease provided:

The Government shall pay the Lessor annual rent of $522,810.00 at the rate of $43,567.50 per month in arrears.

In paragraph six, Saul agreed to

furnish to the Government, as part of the rental consideration, the following:

A) All maintenance, services and utilities as specified in SFO [Solicitation for Offers] 87–057, as amended.

B) Make available 20 parking permits for Government employees which shall be paid directly by the Government employees at the prevailing rental.

The Solicitation included a document entitled "Lessor's Annual Cost Statement," which set forth the "estimated annual cost of services and utilities furnished by lessor as part of rental consideration" as $78,150. The operating costs provision of the Solicitation provided for annual adjustments of those operating costs. Beginning in the second year of the lease the government was required to "pay adjusted rent for changes in costs," which were to be "determined by multiplying the base rate [for operating costs] by the percent of change in the cost of living index," as measured by a designated Consumer Price Index. The adjusted costs were to be paid "with the monthly installment of fixed rent."

In the second through the fifth years of the lease, the parties annually amended the lease to increase the base operating cost in accordance with the Solicitation. In the second year, this was done through a supplemental lease agreement which, "to reflect operating cost escalation provided for in the basic lease agreement," provided that "the annual rental is increased by $6,328.72. The new annual rental is $979,-339.72 payable at the rate of $81,611.64 per month in arrears." Increases in operating costs for the third through fifth years were made in the identical way.

During the term of the lease, Saul also agreed to provide additional space, parking spaces, and services, and the parties executed supplemental lease agreements so stating. For the added office space and parking spaces, these agreements "amended the [original] lease" by providing that "[t]he Government shall pay the lessor an annual rental increase of [stated dollars] at a rate of [stated dollars] per months in arrears." For additional cleaning services, the lease was "amended" (1) "[t]o reflect day-time cleaning for the 6th floor, ... at a rate of $13,344.96 per annum" and (2) "[t]o reflect an increase in rent of $5,950 per year to provide for daytime cleaning ... on the first floor."

At the end of the lease term, Saul and the government had extensive and hard-fought negotiations over extending the lease. The government considered Saul's offers too high and began condemnation proceedings. After further negotiations, the parties agreed upon a two-year extension. The negotiations related to the annual rent and the length of the extension. The parties did not discuss whether the rent for the extended term would cover the additional services Saul provided.

The parties then executed another supplemental lease agreement (on the same standard government form as the agreements providing for additional space, services, and parking services) which, after reciting that "the parties desire to amend the above [original] lease," provided that:

1. The first sentence of Paragraph 3 of Standard Form 2 is hereby amended to read as follows:

"3. Effective January 22, 1993, the Government shall pay the Lessor annual rent of $1,341,148.26 at a rate of $111,782.36 per month in arrears."

2. Paragraph 4 is hereby added to Standard Form 2 and reads as follows:

"4. The execution of this Supplemental Lease Agreement, and the rent provided hereunder, is full accord and satisfaction of any and all claims of Lessor against the government arising out of or related to the Government's occupancy of the leased premises from January 22, 1993 through the date of execution of this Supplemental Lease Agreement."

3. The term of the Lease is extended through, and the Lease shall expire on, January 21, 1995.

All other terms and conditions of the lease shall remain in force and effect.

After the extended lease expired, Saul filed a claim with the contracting officer covering, for the extended lease term, (1) the additional parking spaces, (2) the daytime cleaning services, and (3) certain operating cost escalations. Saul contended that the annual rent, as amended by the supplemental lease agreement that extended the lease term, did not include compensation for these items. When the contracting officer did not decide the claim within six months, Saul appealed to the Board.

After a hearing, the Board rejected most of Saul's claims. Insofar as is here pertinent, the Board held that the "costs for daytime cleaning and parking were included in the annual rent established in the extension SLAs [supplemental lease agreements], and payment of the annual rent fulfilled [the government's] obligation to pay for these costs." The Board also held that the "annual rent in the extension SLAs did include the operating cost escalations established in the previous SLAs."

## II

■ The sole issue is whether the "annual rent" provision of paragraph three of the original lease, as amended by the two-year lease extension, covered the additional services Saul had agreed to provide, namely, the "costs for day-time cleaning and parking" and "the operating cost escalations established in previous SLAs." We agree with the Board that it did.

A. In the original lease, in return for the government's payment of the "annual rent," Saul provided, and the government received, (1) use of the leased space and (2) various services. In paragraph six, Saul agreed to furnish those services "as part of the rental consideration." When Saul's increased costs for providing those services were recognized under the operating costs escalation provision, the adjustment was made in supplemental lease agreements by increasing "the annual rental." When Saul agreed to provide additional office space, the parties amended the lease by providing for "an annual rental increase of [stated dollars] at a rate of [stated dollars] per months in arrears." When Saul agreed to provide extra parking spaces, the parties again agreed to "an annual rental increase of [stated dollars] at a rate of [stated dollars] per month in arrears." Finally, when Saul agreed to provide daytime cleaning services, the parties agreed to increase the rent "per annum" or "per year," by stated amounts. Each month the government gave Saul a single check covering ½₂ of the "annual rent," as adjusted throughout the lease.

■ Thus, during the original term of the lease, the parties consistently treated the increases in Saul's costs of providing the specified services and providing additional services as additions to the "annual rent," not as separate charges. That was how those additional charges were paid. Every one of those charges took that form. "It is a familiar principle of contract law that the parties' contemporaneous construction of an agreement, before it has become the subject of a dispute, is entitled to great weight in its interpretation." *Blinderman Constr. Co. v. United States,* 695 F.2d 552, 558 (Fed.Cir.1982) (citation omitted). The supplemental lease agreements that increased the amount of annual rent for those services did so by amending the "annual rent" required by paragraph three of the original lease.

The supplemental lease agreement which extended the lease an extra two years amended paragraph three of the original lease to provide a new "annual rent." Thus, the renewed lease continued the prior arrangement under which the "annual rent" covered the charges for both the leased space and all additional services Saul provided.

If in the renewal lease the parties intended to change that arrangement by excluding the additional services from the "annual rent," one would assume and ex-

pect that they would have specified that change, either in the negotiations leading to the renewal lease or in the renewal lease itself. They did neither. The question was not even raised in the negotiations, which dealt with the amount of the "annual rent" and the term of the extension. Instead, the lease extension agreement provided that "all other terms and conditions of the lease [i.e., other than the changed 'annual rent' and term of the lease] shall remain in force and effect."

B. Saul contends, however, that because the operating costs escalation provision provided that the escalated costs were to be paid "with the monthly installment of fixed rent," the reference in paragraph three of the original lease to "annual rent" referred to only the "fixed rent," *i.e.,* the portion of the "annual rent" covering the right to use the premises. It contends that because the "annual rent" specified in paragraph three was limited to the "fixed rent," the "annual rent" set forth in the renewal lease did not include the cost of providing the supplemental services. In its brief Saul repeatedly refers to the "fixed rent" provision of paragraph three instead of to the "annual rent" it specifies.

The operating costs escalation provision's reference to the "fixed rent," reflecting the portion of the annual rent that was not subject to annual adjustment, provided the mechanism by which the escalated costs were paid. Those additional costs would be added to and therefore included in the monthly installments of "annual rent" that paragraph three required the government to pay. The provision, however, did not change the requirement in paragraph three that the government pay a specified amount of "annual rent" that covered both the use of the leased space and all the services Saul provided. "Annual rent" in paragraph three was a single unitary concept; it cannot be treated as two separate items, as Saul would do.

Saul also makes a number of highly technical arguments relating to various provisions of the lease. They are equally unpersuasive and do not warrant further discussion.

## CONCLUSION

The decision of the General Services Administration Board of Contracts Appeals is

*AFFIRMED.*