GPA–I, LP, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–350C.

United States Court of Federal Claims.

May 31, 2000.

Alvin D. Lodish and Allyn S. Danzeisen, Miami, FL, for plaintiff.

Jan M. Folena, Washington, D.C., with whom were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Mark A. Melnick, Assistant Director, and Katharine S. Vance, of counsel, for defendant.

### Opinion and Order

WEINSTEIN, Judge.

This dispute regarding the timeliness of defendant's lease payments is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, and the parties' cross-motions for summary judgment. Because plaintiff submitted and the contracting officer (CO) finally decided a valid claim under the Contract Disputes Act of 1978(CDA), 41 U.S.C. §§ 601–13 (1994 & Supp. III 1997), the court denies defendant's motion to dismiss for lack of jurisdiction. Because the leases' plain language supports defendant's interpretation, the court grants defendant's motion for summary judgment, and denies plaintiff's motion for summary judgment that it is owed interest on allegedly late payments.

### FACTS

The following key facts are not in dispute:

The United States Army Corps of Engineers entered into two interim leases and later a 10 year "permanent" lease with GPA–I for office space, parking, and other amenities. The amounts and timing of the lease payments are not disputed. (*See* Table.) [1]

The parties dispute the meaning of the clause setting rental payment due dates:

The initial monthly rental payment under this lease shall become due within 30 days of the first workday of the *month following* the month in which the lease or supplemental agreement establishing commencement of the lease term is executed, or within 30 days of the first workday of the *month following* the month in which the occupancy of space is effective, whichever is later, except that should the leased space be occupied after the fifteenth day of the month, the payment due date shall be the thirtieth day of the *second* month following the month in which it was occupied. *Subsequent rent shall be paid in arrears,*

---

1. Lease § 21 makes applicable the Prompt Payment Act (PPA), 31 U.S.C. §§ 3901–3907 (1994 & Supp. IV 1998), requiring payment of interest on overdue payments. Defendant originally argued that plaintiff is not entitled to PPA interest because the payments are in dispute. However, it concedes that the PPA is applicable in its reply brief. Congress expressly provided in the PPA that "a claim for an interest penalty not paid under this chapter may be filed under section 6 of the Contract Disputes Act of 1978 (41 U.S.C. § 605)." 31 U.S.C. § 3907(a).

*and will be due within 30 days of the first workday of each successive month,* and only [sic] provided for by the lease.

(Emphasis added).[2]

After the permanent lease became effective, plaintiff's chief manager, Mr. Oscar W. Seelbinder, Jr., discussed with the CO, Mr. Don Burchett, certain lease disputes. The CO asked Mr. Seelbinder to put plaintiff's claims in writing, and said that he would provide a final decision.[3]

On June 11, 1998, plaintiff sent a letter to the CO alleging that the government's rental payments were tardy. The letter states:

The Government has regularly breached its obligation to timely make the rental payments due under the Lease .... Section 21 of the Lease requires the government to make all rental payments to GPA–I by the 30th day of the month. However, the Government has repeatedly been very late and GPA–I, without waiving any of its rights under the Lease, has accepted the late payments previously.

The letter states that GPA–I cannot "continue to finance the Government," and that it "must have the payments timely processed and delivered in accordance with the lease." It demands that the CO address the rental payment issue "immediately" and states that it is "available to meet and resolve all of the issues at your earliest convenience."

On July 20, 1998, the CO responded, stating: "Late rental payments have been due in part to receipt of quarterly funds at this location .... We believe this problem is now resolved and you should receive your rental payments in the future prior to the 10th of the month in the month following the preceding rental period."

On September 25, 1998, plaintiff sent a letter to the district engineer (DE), again alleging that the government's payments were tardy under section 21, attaching a list of months in which payments allegedly were late, and demanding interest on the allegedly late payments as provided for by section 22 of the lease. The list of late-payment months includes the payment amounts and the number of days they allegedly were late. This letter and attachment were carbon-copied to the CO.

On October 12, 1998, the DE responded that the lease allowed payment within 30 days of the first workday of each successive month, and observed that "all rental payments were disbursed within 30 days after the rental due date." Defendant granted that "[i]n an effort to foster a better Lessor/Tenant relationship, we will in the future make every effort to make payments within the first 10 working days of the period allowed by paragraph 21 and the Prompt Payment Act."

In subsequent correspondence, plaintiff continued to contend that the lease required defendant to pay rent within thirty days of the first workday of *each rental month, i.e.,* making the May rent due within 30 days of the first workday of May, while defendant asserted that the lease allowed payment within 30 days of the first workday of the month *following* the rental month, *i.e.,* making the May rent due within 30 days of the first workday of *June.*

Plaintiff's timely-filed[4] complaint asks for unspecified money damages for 13 alleged breaches of the first interim lease (Count I) and of the permanent lease (Count II), plus a declaration that its interpretation of the rental payment due date is correct (Count III).[5]

2. The standard Federal Acquisition Regulation (FAR) clauses (applicable to contracts with invoices) allows the government 30 days from receipt of an invoice to pay, *see* 48 C.F.R. § 32.905(a)(1) (1999); *id.* § 52.232–25(a)(1)(i)(A),(B), but the FAR explicitly provides: "If a contract does not require submission of an invoice for payment (*e.g. periodic lease payments*), the due date will be as specified in the contract." *Id.* § 32.905(a)(1)(iii) (emphasis added).

3. Lease § 20 makes the CDA applicable to the lease, defines the meaning of "claim," provides that all claims be submitted in writing to the CO, and requires certification of claims exceeding $100,000.

4. *See* 41 U.S.C. § 609(a)(3) (complaints timely if filed within twelve months of the CO's final decision).

5. The complaint seeks damages under only the first interim lease and the permanent lease. The complaint never mentions the second interim

Defendant moved to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment. Plaintiff cross-moved for summary judgment. Neither party has requested oral argument.

## DISCUSSION

### Jurisdiction

Federal courts have limited jurisdiction. The jurisdiction of the United States Court of Federal Claims is limited "to the metes and bounds of the United States' consent to be sued in its waiver of [sovereign] immunity." *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461 (Fed.Cir.1998) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)). The court must ascertain its jurisdiction before it considers the merits of a claim. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In evaluating a motion to dismiss, the court construes all allegations in favor of the non-moving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the ultimate burden of establishing jurisdiction rests on plaintiff. *See Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991).

### CDA Claim

Defendant seeks dismissal for lack of jurisdiction, *see* Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), because plaintiff's claim fails (1) to specify the relief requested; (2) to specify the basis for that relief; (3) to request a sum certain; and (4) to request the CO's decision. These track the standards set out in, *e.g., Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir. 1987) (notice of basis and amount of claim) and *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996) (sum certain; request for final decision).

■ The leases in this case contain a "disputes clause" expressly subjecting them to the CDA. "[F]or the court to have jurisdiction under the CDA, there must be both a valid claim, a term the act leaves undefined, and a contracting officer's final decision on that claim." *James M. Ellett,* 93 F.3d at 1541–42; 28 U.S.C. § 1491(a)(2) (1994 & Supp. IV 1998); *see also Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1264 (Fed.Cir.1999).

. ■ When a contractor seeks monetary relief, a valid CDA claim must request a "sum certain." *James M. Ellett,* 93 F.3d at 1542. The Court of Federal Claims has, on several occasions, held that the "sum certain" requirement is met "when the amount in dispute can be determined by a simple mathematical calculation." *Hamza v. United States,* 31 Fed.Cl. 315, 322 (1994) (citing *Metric Constr. Co. v. United States,* 14 Cl.Ct. 177, 179 (1988)); *see also Executive Court Reporters, Inc. v. United States,* 29 Fed.Cl. 769, 775 (1993), *appeal dismissed,* 22 F.3d 1106 (Fed.Cir.1994)(unpublished table decision dismissing for failure to prosecute); *Sun Eagle Corp. v. United States,* 23 Cl.Ct. 465, 472 (1991); *Cubic Corp. v. United States,* 20 Cl.Ct. 610, 617 (1990).

■ This court also has jurisdiction "to render judgment upon any [CDA] claim ... including ... *nonmonetary disputes* on which a decision of the contracting officer has been issued ...." 28 U.S.C. § 1491(a)(2). The Federal Circuit recently has held that a contractor's written demand seeking "interpretation of a contract term" is a claim if the contractor "specifically assert[s] entitlement to the [declaratory] relief sought .... [by] assert[ing] specific contractual and legal grounds for its interpretation." *Alliant,* 178 F.3d at 1265. *See also Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1576 (Fed.Cir.1995) (en banc) (a "claim" is "a written demand seeking a sum certain (*or other contract relief*) as a matter of right") (emphasis added); 48 C.F.R. § 33.201 ("Claim, as used in this subpart, means a written demand or assertion by one of the contracting parties seeking ... the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract."). Thus, there is no requirement in cases brought under 28 U.S.C. § 1491(a)(2) to request a sum certain.

---

lease, does not attach it, and asks in Count I only for "interest accruing from all overdue payments under the Interim Lease since June 1, 1997." Compl. ¶ 22.

■ While CDA claims must request a contracting officer's final decision, *James M. Ellett*, 93 F.3d at 1542, "a request for a final decision can be implied from the context of the submission." *Id.* at 1543. "'[M]agic words' need not be used." *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1578 (Fed.Cir.1992). The request need not be explicit, but only show "an 'expression of interest,' which may be made implicitly." *Id.* at 1577.

■ "'The plain language of § 605 requires claims against the Government to be submitted to the contract officer. It does not, however, require that the claims be sent only to the contracting officer, or necessarily directly to that officer ....'" *D.L. Braughler Co. v. West*, 127 F.3d 1476, 1481 (Fed.Cir. 1997) (citing *Neal & Co. v. United States*, 945 F.2d 385, 388–89 (Fed.Cir.1991)); *see also Dawco Constr., Inc. v. United States*, 930 F.2d 872, 880 (Fed.Cir.1991) (submission requirement satisfied so long as contractor commits its claim to the CO's authority to make a final decision) (overruled in part on other grounds, *Reflectone, Inc.*, 60 F.3d 1572). Several pieces of correspondence or documents may together form a valid claim. *See Contract Cleaning Maintenance*, 811 F.2d at 592. Moreover, a contractor's suggestion of a meeting and expression of hope that a dispute could be settled does not prevent a writing from being a CDA claim. *Id.*

■ The court is satisfied that plaintiff's September 25, 1998 letter requests a sum certain. The letter states the specific amount of rent and the number of days each amount allegedly was late. It demands "interest on the late payments as provided" for by the PPA. The PPA requires payment of interest at a specific rate, *see* 31 U.S.C. § 3902, and requires that the government calculate this amount itself in the first instance. *See id.* § 3902(c)(1) (penalty shall be paid without request). By applying the CDA

interest table to the information in plaintiff's claim, the CO could, through simple mathematical calculation, determine the precise amount of plaintiff's claim. Accordingly, plaintiff's letter meets the sum certain requirement. *See, e.g., Hamza*, 31 Fed.Cl. at 322.[6]

■ In addition, plaintiff's June 11, 1998 letter constitutes a CDA claim for non-monetary relief. It sought the government's explanation for the allegedly-late payments, stating: "GPA–I must have the payments timely processed and delivered in accordance with the Lease," and requested the CO to address the issue. It also asserted specific contractual grounds for its interpretation of the payment-due-date clause: "[s]ection 21[7] of the Lease requires the Government to make all rental payments to GPA–I by the 30th day of the month.... The monthly rental payments have consistently been two to four weeks late every month without explanation from the Government."

■ Both the June 11 and September 25, 1998 letters implicitly request the CO's final decision. They state plaintiff's need for timely payment or the applicable late interest penalty and demand that the CO address the issues "immediately." Thus, its letters are "expression[s] of interest" in the CO's final decision. *Transamerica*, 973 F.2d at 1578.

Moreover, according to Mr. Seelbinder's unchallenged affidavit, "the contracting officer told [Mr. Seelbinder] to put the claim[ ] in writing to him and [that] he would make a final decision .... [Mr. Seelbinder] followed [the CO's] direction and put the claims in a letter to him dated June 11, 1998, seeking a final decision." Because the claim was submitted in writing, and sought a final decision, plaintiff's request, implied from the CO's agreement to issue a final decision on it, is a claim under the CDA. *See James M. Ellett*, 93 F.3d at 1543.

Accordingly, plaintiff's failure to certify its submission does not prevent the submission from being a valid CDA Claim. *See D.L. Braughler*, 127 F.3d at 1480 (uncertified submission not a "claim").

---

**6.** Section 605(c)(1) of the CDA also requires contractors to certify claims that exceed $100,000. 41 U.S.C. § 605(c)(1); *see D.L. Braughler*, 127 F.3d at 1480–81, & n. 5. The court calculates the value of the claim plaintiff submitted to the CO to be approximately $3300 (calculated according to the interest rate and compounding principle required by the PPA. *See* 31 U.S.C. § 3902(a),(e)).

**7.** Section 20 of the first interim lease.

 Under binding precedent, the CO's written response on July 20, 1998, must be deemed a final decision because the CO promised one, rejected plaintiff's written interpretation of the lease, and denied that rent was due within thirty days of the first workday of the rental month. *See Alliant,* 178 F.3d at 1267 (CO's letter stating that plaintiff's interpretation of the contract was incorrect represents a valid contracting officer's final decision under the CDA).[8] The CO never responded in writing to plaintiff's September 25, 1998 letter. The DE, however, denied that any PPA late payment penalties were due. Because the CO did not respond within 60 days, the September 25, 1998 letter is "deemed denied" and no final decision is required. *See Case, Inc. v. United States,* 88 F.3d 1004, 1008–09 (Fed.Cir. 1996); 41 U.S.C. § 605(c).

Because the June 11, 1998 and September 25, 1998 letters are valid CDA claims finally decided by the CO, the court concludes that it has jurisdiction over this dispute and denies defendant's motion to dismiss on these grounds.

### Summary Judgment

Summary judgment is appropriate when the court finds both that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The moving party bears the burden of demonstrating the absence of genuine issues of material fact." *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir. 1994).

An issue of material fact preventing summary judgment is one that is relevant and necessary to establishing or defending against the claim and that may affect the outcome of the decision. *See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1449–50 (Fed.Cir.1993). An issue

is genuine if a reasonable finder of fact could decide the question in favor of the non-movant. *See Opryland USA Inc. v. Great Am. Music Show, Inc.,* 970 F.2d 847, 850 (Fed. Cir.1992). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This means that "the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. However, if the motion for summary judgment is made and supported, the non-movant must produce substantial admissible and credible evidence in its favor. *See* RCFC 56(c); *see also* RCFC App. H; RCFC 56(f) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of such party's pleading.").

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988). "When both parties move for summary judgment, each party's motion must be evaluated on its own merits and all reasonable inferences must be resolved against the party whose motion is under consideration." *Promac, Inc. v. West,* 203 F.3d 786, 788 (Fed.Cir.2000).

### Contract Interpretation

 Contract interpretation is a question of law subject to decision by summary judgment. *See Dalton v. Cessna Aircraft Co.,* 98 F.3d 1298, 1305 (Fed.Cir.1996); *Government Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 813 n. 1 (Fed.Cir.1988) ("Contract interpretation is ... amenable to decision on summary judgment.").

 When the parties dispute the meaning of a contract, the court first consid-

---

**8.** The CO apparently also *volunteered* to see that plaintiff received its rent by the 10th day of the month following the rental period, a result the CO does not claim to be required under the contract. Clearly, plaintiff may not estop the government from asserting any valid defense to

plaintiff's claim for interest on the basis of this gratuitous offer. *See OPM v. Richmond,* 496 U.S. 414, 434, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (government not estopped even if its agent gave erroneous advice).

ers its plain language. *See Northrop Grumman Corp. v. Goldin*, 136 F.3d 1479, 1483 (Fed.Cir.1998). Particular contractual provisions are read in the context of the entire agreement, and may not be construed so as to render portions meaningless. *See Dalton*, 98 F.3d at 1305.

■ An interpretation of a contract that makes any part "useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieve[s] a weird and whimsical result" is not allowed. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir. 1991) (quoting *Arizona v. United States*, 216 Ct.Cl. 221, 575 F.2d 855, 863 (1978)). If a contract term is unambiguous, the court cannot assign it another meaning, no matter how reasonable it may appear. *See Triax Pacific, Inc. v. West*, 130 F.3d 1469, 1473 (Fed.Cir. 1997).

■ "When a contract is susceptible to more than one reasonable interpretation, it contains an ambiguity." *See Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed.Cir.1999). Ambiguities may be patent or latent. "An ambiguity is patent if 'so glaring as to raise a duty to inquire,' " *id.* (citing *Newsom v. United States*, 230 Ct.Cl. 301, 676 F.2d 647, 649–50 (1982)); or "if the ambiguity would be apparent to a reasonable person in the claimant's position," *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed.Cir.1997); or if provisions conflict facially. *See United Int'l Investigative Servs. v. United States*, 109 F.3d 734, 738 (Fed.Cir.1997). If a contractor faced with a patent ambiguity fails to seek clarification, it is not entitled to rely upon its construction of the contract. *Id.*

■ An ambiguity is latent when "there is no facial ambiguity," *Lockheed Martin*, 108 F.3d at 322, and it becomes evident only when considered in light of subsequent objective circumstances. *See ITT Arctic Servs., Inc. v. United States*, 207 Ct. Cl. 743, 524 F.2d 680, 692 (1975). If an ambiguity is latent, the court construes it against the drafter under the "general rule of

contra proferentem." *Metric Constructors*, 169 F.3d at 751. However, the non-drafting party's interpretation must be reasonable, *see Community Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1579 (Fed.Cir.1993), and the non-drafting party must show that it reasonably relied on its interpretation. *See Froeschle Sons, Inc. v. United States*, 891 F.2d 270, 272 (Fed.Cir.1989).

■ Plaintiff and defendant both claim that the leases' rental payment provision is unambiguous. Plaintiff asserts that, except for the first month's rent, rent is due within 30 days of the first workday of each rental month. Plaintiff reads the phrase "each successive month" to mean any and all the months following the first rental month. Plaintiff reads the phrase "in arrears" to mean any time '*within 30 days* of the first workday of' the rental month (including, necessarily, the *first* workday of the rental month). Plaintiff seeks interest for thirteen months of late lease payments.[9] In sum, under plaintiff's reading "in arrears" means after the first workday of the rental month. Therefore, *any* payment within 30 days of that day would be in arrears.

Defendant asserts that "successive month" means the month following each rental month and contends that a payment "in arrears" means a payment made *after* the end of the *rental* month, *i.e.*, in the following month. In sum, under defendant's reading, payments are due within 30 days of the first workday of the month following any rental month.

The court agrees with defendant that payments 'in arrears' are payments made after the rental month, and that 'each successive month' refers to the month following each rental month. First, the General Service Administration's (GSA) acquisition regulations, although not applicable to this lease, illuminate the meaning of "in arrears." The GSA regulations provide: "Rent shall be paid monthly in arrears and will be due on the first workday of each month." *See* 48 C.F.R. § 552.232–71(a)(1) (1997 & 1998). If "in ar-

---

**9.** Plaintiff does not allege in its complaint that the March and September 1998 payments were late.

rears," as plaintiff's argument requires, means only after the first day of the rental month, it would be superfluous in this clause. To so read "in arrears" a lessee would be late virtually as soon as the month started. On the first workday of each month defendant already would be "in arrears." Thus, for the GSA clause to make sense "in arrears" must mean after the rental month and the term 'month' in the phrase "on the first workday of each month" must refer to the month after the rental month.

Second, the courts that have considered the meaning of "in arrears" have concluded that it means after the rental month. *See generally Summerfield Hous. Ltd. v. United States,* 42 Fed.Cl. 160, 173–74 (1998) (rent to be paid "in arrears" due the first day after the rental month), *aff'd,* 1999 WL 1111478 (Fed.Cir. Dec.3, 1999) (unpublished table decision) (decision regarding the timing of payments not appealed); *North Star Alaska Hous. Corp. v. United States,* 30 Fed.Cl. 259, 274–75 (1993) (in arrears means payment due after the rental month).

In *North Star,* the *lease* provided that monthly rental payments be made "in arrears." *Id.* at 274. The court surveyed earlier Board of Contract Appeals' decisions interpreting "in arrears," and held that, standing alone, " 'in arrears' contemplates payments made in a reasonable time period following the month of occupancy." *Id.* at 274–75. Because the lease contained no specific "reasonable time period" but the parties stipulated that, as provided by the PPA, 30 days was reasonable, the court held that the lease allowed payment within 30 days of the first workday of the month following the month of occupancy. *Id.* at 275. In this case, the lease provides for payments "in arrears" and provides a specific reasonable time period: "within 30 days of the first workday of each successive month." Accordingly, defendant's interpretation that the lease allows for payments within 30 days of the first workday of the month following the rental month is reasonable.

Comparing the leases' language with the GSA clause demonstrates that defendant's interpretation is reasonable, while plaintiff's

is not. This lease differs from the GSA clause by making the initial month's rental payment due (1) *"within 30 days of* the first workday of the month *following"* the initial month, rather than "on the first workday of the month following" the initial month, when the lease commences on the fifteenth or earlier, and (2) "on the thirtieth day of," rather than "on the first workday of," the *second* following month when the lease commences on the sixteenth or later. *See* 48 C.F.R. § 552.232–71(a)(1)(i),(ii) (1997 & 1998).[10] For all other ("subsequent") months, this lease, like the GSA clause, provides for rent "in arrears" but substitutes, in substance, *"within 30 days of* the first workday of each *successive* month," (emphasis added), for "on the first workday of each month." *See id.* § 552.232–71(a)(1). In other words, this lease consistently allows the government 30 more days than the GSA clause does to pay the rent.

Defendant's interpretation of "in arrears" and "within 30 days of the first workday of each successive month" is reasonable because it consistently gives the same meaning to the language allowing 30 more days to make payments. Plaintiff's interpretation, on the other hand, is unreasonable. It gives effect to the language allowing 30 more days for the initial month, but gives no effect to the substantially identical language allowing 30 more days for subsequent months. It renders the language meaningless by giving it the same meaning as the GSA clause, despite the substantially different language. Such an interpretation is unacceptable. *See Dalton,* 98 F.3d at 1305; *Gould,* 935 F.2d at 1274.

Plaintiff's interpretation is unacceptable for yet another reason. Under plaintiff's interpretation, in any rental month with 31 days in which the first day also is the first workday of the month (*e.g.,* the month of May 2000), payment would be required to be made during the *current* rental month, *i.e.* by May 31, 2000. This interpretation is in direct conflict with the term "in arrears" and renders it meaningless in the many months with 31 days, like the month of May 2000, in

10. The meaning of the payment provision for the initial month is undisputed.

which the first workday of the month also is the first day of the month. In the year 2000 for example, the months of March, May, and August would fall within this category. In 2001, five months—January, March, May, August, and October—would be subject to this contradiction. Again, an interpretation that is inconsistent with the plain terms of the lease in eight out of 24, or one out of three, months must be rejected. *See Dalton,* 98 F.3d at 1305; *Gould,* 935 F.2d at 1274.

■ Plaintiff makes several additional, but unpersuasive, arguments to support its interpretation. First, plaintiff relies on evidence of its chief manager's understanding at contract signing. *See* Affidavit of Oscar W. Seelbinder ¶ 5. However, Mr. Seelbinder's affidavit does not aver that he communicated his interpretation of the contract prior to signing. It is well settled that the "unexpressed, subjective unilateral intent of one party is insufficient to bind the other contracting party...." *Firestone Tire & Rubber Co. v. United States,* 195 Ct.Cl. 21, 444 F.2d 547, 551 (1971).

■ Plaintiff also argues that the parties' pre-controversy conduct supports its interpretation. Such conduct, though "entitled to great weight," *Saul Subsidiary II Ltd. Partnership v. Barram,* 189 F.3d 1324, 1326 (Fed. Cir.1999), is relevant only if the contract is ambiguous. *See Edward R. Marden Corp. v. United States,* 803 F.2d 701, 705 (Fed.Cir. 1986) ("It is the general law of contracts that in construing ambiguous ... contracts, the courts will look to the construction the parties have given to the instrument by their conduct before a controversy arises."). This lease is not ambiguous.

■ Plaintiff makes much of the fact that five of the fourteen pre-controversy payments were timed consistently with plaintiff's interpretation, that is, within the rental month. *See* Table. On the other hand, plaintiff offers no evidence that it complained

about the other nine payments, which were made well into the following month. Moreover, plaintiff, pre-dispute, signed two more leases, containing identical clauses, without comment or dispute. Therefore, this aspect of the parties' pre-dispute conduct, even if relevant, does not clearly illuminate their mutual intent and so does not support plaintiff's position. Actions taken after contract formation that do not illustrate the intent of the parties *during* formation cannot change "the terms to which [plaintiff] agreed." *Textron Defense Sys. v. Widnall,* 143 F.3d 1465, 1468–69 (Fed.Cir.1998). A long line of precedent establishes that "agreed-upon contract terms must be enforced." *Madigan v. Hobin Lumber Co.,* 986 F.2d 1401, 1403–04 (Fed.Cir.1993) (citing cases).

While plaintiff also alleges that the CO admitted in writing, pre-dispute, that plaintiff's interpretation was correct, the CO's July 20 letter does not support this allegation. The CO (without explanation) [11] did admit "late" payments. However, he wrote: "you should receive your rental payments in the future prior to the 10th of the month in the *month following* the preceding rental period." (Emphasis added.) Plaintiff argues that payment was due 30 days after the first workday of each *rental* month (generally no more than *three* days into the following month). Thus, defendant's tenth-of-the-following-month payment promise is inconsistent with plaintiff's interpretation and *not* inconsistent with defendant's interpretation.

Additionally, plaintiff argues that defendant's pre-dispute conduct is inconsistent with its present interpretation of the lease because, under its present interpretation of the lease, the majority (allegedly) of the government's payments violate OMB Circular A–125(4)(k)(1).[12] Because A–125(4)(k)(1) provides that agencies shall not make payments "more than seven days prior to the payment due date ...," and because defendant's interpretation of the lease allows payment *within* 30 days of the first workday of

---

11. Defendant has not explained what "late" means. Perhaps the CO was referring to the one payment that was late, even under defendant's interpretation: the August 27, 1997, payment for space occupied on April 22, 1997. *See* Table. The government concedes this delinquency and

has agreed to make the appropriate interest payment.

12. Section 22 of the lease makes the circular applicable to "[d]eterminations of interest due" pursuant to the PPA.

the month following the rental month, only one of defendant's pre-dispute payments (the December 18, 1997 payment for the December 1997 rental month, *see* Table) violates this provision.

On the other hand, A–125 provides that agencies must pay interest penalties "automatically, without contractors having to request them . . . ." OMB Circular A–125 at Policy. The PPA contains the same requirement. *See* 31 U.S.C. § 3902(c)(1) ("such penalty shall be paid without regard to whether the business concern has requested payment of such penalty"). If, pre-dispute, defendant believed that payments were due according to plaintiff's interpretation of the lease, it violated both the circular and the PPA with each allegedly late payment unaccompanied by an interest penalty.

It is reasonable to assume that, pre-dispute, the CO held the interpretation that results in the fewest violations of his duties, and not the most, because "[t]here is an assumption that government officials perform their duties properly and in good faith." *Mullins v. DOE*, 50 F.3d 990, 993 (Fed.Cir. 1995). Thus, the fact that plaintiff's interpretation would create many more violations than defendant's demonstrates that defendant's pre-dispute conduct is consistent with its current interpretation of the lease and inconsistent with plaintiff's interpretation.

Finally, plaintiff contends that, if its interpretation is not accepted, the payment provision becomes latently ambiguous. Even if ambiguous, however, the ambiguity is not latent. On the contrary, under plaintiff's interpretation, the terms "in arrears" and "successive month" are given no meaning. A reasonable person in plaintiff's position should have noticed this facial ambiguity. Plaintiff certainly must have been aware of the ambiguity, if any, by the time it signed the second and third leases containing the same clause. Therefore, if the provision is ambiguous, it is patently, not latently, so. *See United Int'l Investigative Servs.*, 109 F.3d at 738; *Lockheed Martin*, 108 F.3d at 322. Because there is no evidence that plaintiff sought clarification from defendant before the contract was signed, plaintiff may not rely on its interpretation. *See United Int'l Investigative Servs.*, 109 F.3d at 738 (duty to inquire placed on contractor when a provision is patently ambiguous).

## CONCLUSION

Defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1) is denied because plaintiff made valid CDA claims for monetary and non-monetary relief that were denied by the CO. Defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied, because the contract's plain language supports defendant's interpretation of the payment-due clause. The clerk shall enter judgment dismissing plaintiff's complaint. No costs.

**Table:**
**Rental Month, Payment Dates, and Consistent with which party's interpretation**