**MADE IN THE USA FOUNDATION and, Genuine American, Inc., d/b/a Game Apparel, Plaintiffs,**

v.

**THE UNITED STATES, Defendant.**

No. 00–251C.

United States Court of Federal Claims.

Dec. 14, 2001.

Joel David Joseph, Washington, DC, attorney for Plaintiffs.

Russell A. Shultis, Washington, DC, attorney for Defendant.

## OPINION

WILSON, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the United States Court of Federal Claims (RCFC). For the reasons discussed below, defendant's motion to dismiss is GRANTED.

## BACKGROUND

This suit involves an alleged contract between plaintiff Genuine American, Inc. (Genuine American), a producer of American-made apparel and the defendant Navy Exchange Services Command (NEXCOM), which operates Navy Exchange retail stores. Plaintiff Made in the USA Foundation is a nonprofit organization dedicated to the promotion of American-made products.

Plaintiffs make the following allegations in their complaint. In March 1999, an authorized agent of NEXCOM placed an $89,712 clothing order with Genuine American. NEXCOM advised Genuine American that the goods should be "cut to order," i.e., made exclusively for NEXCOM. On August 10, 1999, NEXCOM reduced its order to Genuine American, from $89,712 to $15,972 worth of apparel. The products were due in thirty days, by September 10, 1999. The reduced quantity and tight deadline diminished the cost effectiveness of filling the order. Consequently, although Genuine American made samples of the clothing at an estimated cost of $10,000, it did not fill the order. (Tran-script of Oral Argument held on May 22, 2001(Tr.) at 24–25.) Plaintiffs claim that the order was replaced with orders for imported clothing.

On June 9, 1999, Joel Joseph, in his capacity as chairman of Made in the USA Foundation, wrote to the Secretary of Defense to protest the failure of NEXCOM and the Army and Air Force Exchange Services (AAFES) to purchase more American-made products. Noting the large percentage of imported products for sale at military exchanges, Joseph explained that he was not "requesting that only American-made products be sold in exchange stores, merely that American products be made available." He further requested that the Secretary "notify NEXCOM and AAFES of the requirements of the Berry Amendment and instruct them to buy American-made products to the maximum extent possible." (Compl.Ex. 4.) The Berry Amendment of the Department of Defense Appropriations Act, Pub.L. No. 103–139, 107 Stat. 1438 (1993) (codified as amended at 10 U.S.C. § 2241 (1994)), requires that "no part of any appropriation ... to the Department of Defense, except [in circumstances not relevant here], shall be available for the procurement of any article or item of ... clothing ... not ... produced in the United States."

In a July 13, 1999 letter, Major General Barry D. Bates responded on behalf of the Secretary of Defense that AAFES had received and responded to numerous inquiries concerning compliance with either the Buy American Act or the Berry Amendment, and reiterated the Department of Defense's position that neither the Buy American Act nor the Berry Amendment applies to purchases of items offered for resale. Joseph, in his capacity as general counsel of Genuine American, sent a subsequent letter to the head buyer of NEXCOM in September, asserting that "[m]embers of the Armed Services want to buy American" and urging reconsideration of the NEXCOM decision to reduce the amount of the order. (Pl.'s Resp. Br. Ex.)

Invoking the Tucker Act, 28 U.S.C. § 1491 (1994 & Supp.2000), plaintiffs seek monetary relief in the amount of $89,712, the alleged original contract price. Plain-

tiffs also seek a declaratory judgment that two statutory provisions apply to Department of Defense purchases for retail purposes by military exchanges: the statutory ban on the importation of products made by convicts, 19 U.S.C. § 1307 (1999),[1] and the Berry Amendment.

Defendant moved to dismiss for lack of subject matter jurisdiction on two grounds: 1) plaintiffs failed to satisfy the requirements of the Contract Disputes Act (CDA), and 2) the Court lacks jurisdiction to order declaratory relief.[2]

## DISCUSSION

Subject matter jurisdiction is a threshold matter which must be addressed before the Court reaches the merits of the plaintiffs' claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case"). When subject matter jurisdiction is challenged, the nonmoving party bears the burden of establishing the court's jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). For purposes of RCFC 12(b), the court will construe the plaintiffs' allegations in the light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

*Breach of Contract*

The Tucker Act confers jurisdiction on the Court to entertain a claim against the United States founded upon an express or implied contract. 28 U.S.C. § 1491(a)(1). Under the Act, an express or implied contract with the

Army and Air Force Exchange Service and Navy Exchanges qualifies as "an express or implied contract with the United States." *Id.* The Tucker Act does not create any substantive right that is enforceable against the United States for money damages. *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The jurisdiction of the Court is limited to "the metes and bounds of the United States' consent to be sued in its waiver of [sovereign] immunity." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed.Cir.1998). The CDA, which is incorporated by reference into § 1491(a)(2) of the Tucker Act, serves this purpose for contract disputes with the United States. *Advanced Materials, Inc. v. United States*, 46 Fed.Cl. 697, 699 (2000). The Court has authority to render judgment upon "any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Dispute Act of 1978, ... and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of the Act." *Id.* § 1491(a)(2). The Contract Disputes Act (CDA) applies to "any express or implied contract (including those of the non-appropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency." 41 U.S.C. § 602(a) (1994).[3]

The Court's jurisdiction under the CDA is predicated on the contractor's fulfillment of two fundamental requirements: the contractor's submission of a written claim to the contracting officer, 41 U.S.C. § 605(a), and the agency's issuance of a final decision, *id.* § 609(a)(3). *See Rex Sys., Inc. v. Cohen*, 224 F.3d 1367, 1372 (Fed.Cir.2000). The

---

1. 19 U.S.C. § 1307 states, in part:

   All goods, wares, articles, and merchandise ... produced, or manufactured wholly or in part in any foreign country by convict labor or/and forced labor or/and indentured labor under penal sanctions shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited.

2. At oral argument, government counsel contested the existence of a binding contract between Genuine American and NEXCOM. The government pointed out that Genuine American never filled the order and that the documents submitted by plaintiff are draft rather than actual or-

ders. (Tr. at 10–13.) The Court need not decide these facts in the context of a motion to dismiss for lack of subject matter jurisdiction.

3. Navy Exchange Service Command and Army Air Force Exchange Services (AAFES) are non-appropriated fund instrumentalities (NAFI). NAFI's are "federal government entities whose monies do not come from congressional appropriation but rather primarily from [their] own activities, services, and product sales." *El-Sheikh v. United States*, 177 F.3d 1321, 1322 (Fed.Cir.1999) (citation omitted).

Federal Acquisition Regulation (FAR) defines a monetary claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." 48 C.F.R. § 33.201 (2000); *see Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1576 (Fed.Cir.1995). No particular language is required to create a claim under the CDA, as long as the contractor submits to the contracting officer a "clear and unequivocal statement" providing adequate notice of the basis and the amount of the claim. *Cubic Corp. v. United States,* 20 Cl.Ct. 610, 616 (1990). Although a request need not be specific, the claimant must establish objective facts demonstrating the request for a final decision.

█ Plaintiffs fail to establish that the prerequisites of the CDA have been met. Neither of the plaintiffs' letters contains a "clear and unequivocal statement" of the basis or the amount of their claim. The letter to the Secretary of Defense does not assert that Genuine American incurred damages as a result of a breach of contract, but rather asks that American-made products be made available for purchase at the exchange stores as a matter of policy. The letter was signed not by Genuine American, the alleged contractor, but by the chairman of Made in the USA, thereby failing to satisfy the requirement that the claim be made by "one of the contracting parties." *Constr. Equip. Lease Co. v. United States,* 26 Cl.Ct. 341, 348 (1992) (counsel's letter to a contracting officer representing two individuals associated with the contractor, did not constitute a "claim" under the CDA). In addition, the letter does not identify or request a claim for relief in a "sum certain" arising from the contract and does not request a final decision from a contracting officer. For these reasons, the first letter is not a "claim" as contemplated by the CDA. *See Pevar Co. v. United States,* 32 Fed.Cl. 822, 824–25 (1995) (public contractor's letter was not a valid claim for relief because it failed to request a sum certain or a final decision as required by the CDA).

█ Perhaps recognizing the statutory deficiency of the first letter, plaintiffs allege for the first time in their reply brief that a September 7, 1999 letter to the head buyer of NEXCOM constitutes a claim under the CDA. The September letter similarly fails to meet the basic requirements of the CDA. Rather than seeking a "sum certain," Genuine American's letter states that "[t]he original order was for more than $80,000, and the new order is for less than $20,000." General statements do not meet the CDA's requirement of a "sum certain." *See, e.g., RSH Constructors, Inc. v. United States,* 14 Cl.Ct. 655, 658 (1988) (a letter in which the contractor listed $25,000 worth of work which it agreed to perform, stated that it was its opinion that the items had been completed with the exception of "a few minor items, certainly no more than $2,000.00 in value," was not a "sum certain"). The second letter, like the first, was signed by Made in the USA's chairman, rather than the contractor. Although the September letter requests that NEXCOM "reconsider" its decision to reduce its clothing order, its major concern is that Navy Exchange stores buy more American-made goods for retail sale. As the letter notes, "[o]ur country needs a strong clothing industry to be able to supply the military with clothing and other products." Neither of the two letters satisfies the requirements of a "claim" under the CDA.

Plaintiffs also fail to provide any evidence of a contracting officer's final decision. Defendant states that it never received the second letter until it was attached to plaintiffs' reply brief. (Tr. at 12.) A contracting officer cannot render a final decision in response to a letter it never received. Citing no precedent, plaintiffs contend that administrative exhaustion would be futile in light of the Department of Defense's stated position that the Berry Amendment does not apply to Navy and Army Exchange purchases. (Tr. at 18.) However, it is well-established that a contracting officer's final decision is "the linchpin for appealing claims under the CDA." *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 645 F.2d 966, 967 (1981); *see also Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1578–79 (Fed. Cir.1994) (a final decision is a "jurisdictional prerequisite" to bring suit in the Court of

Federal Claims).[4] A letter from the agency can constitute a final decision under the CDA even if it does not announce itself as such. *Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1267 (Fed.Cir.1999). However, Major General Bates' response to Made in the USA's letter cannot be reasonably interpreted as a statement by the contracting officer setting forth the reasons for the decision and informing the contractor of its rights with respect to the decision. Indeed, Bates is a representative of AAFES and not NEXCOM, the alleged contractor. *See* 41 U.S.C. § 605(a).

## Declaratory Relief

Plaintiffs' second and third causes of action seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1994). Specifically, plaintiffs seek a declaratory judgment that the Berry Amendment applies to NEXCOM and AAFES purchases, and a court order that NEXCOM and AAFES include in future contracts a certification that the products have not been made by convict and/or forced labor pursuant to 19 U.S.C. § 1307.

█ Traditionally, this Court's jurisdiction has been limited to monetary claims and does not extend to declaratory relief. *See United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (recognizing that the jurisdiction of the Court of Federal Claims is limited to money claims presently due against the United States and does not extend to declaratory relief). As the Supreme Court noted in *King,* "[t]here is not a single indication in the Declaratory Judgment Act or its history that Congress, in passing that Act, intended to give the Court of Claims an expanded jurisdiction that had been denied

to it for nearly a century." *King,* 395 U.S. at 5 89 S.Ct. 1501; *see also Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) (holding that declaratory and injunctive relief are outside the jurisdiction of the CFC). Congress has expanded the Court's jurisdiction to include declaratory and injunctive relief in very limited circumstances. The Federal Courts Administration Act of 1992 (Courts Act), Pub.L. No. 102–572, 106 Stat. 4506 (1992), authorized the Court "to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including ... nonmonetary disputes on which a decision of the contracting officer has been issued." 28 U.S.C. § 1491(a)(2); *Ho v. United States,* 49 Fed.Cl. 96, 101 (2001). No provision, however, allows the Court to exercise jurisdiction when the request for equitable relief is unrelated to a claim for monetary relief pending before the court. *Nat'l Air Traffic Controllers Assoc. v. United States,* 160 F.3d 714, 716–17 (Fed.Cir. 1998); *Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1271 (Fed.Cir.1999) (discretionary declaratory relief, only in limited circumstances, allows the Court to decide "fundamental questions of contract interpretation or [act on] a special need for early resolution of a legal issue").

Plaintiffs claim that their requests for monetary and declaratory relief are sufficiently interrelated to satisfy this Court's jurisdictional requirements. The record with respect to plaintiffs' breach of contract claim is not sufficiently developed to enable the Court to determine whether plaintiffs have a legitimate entitlement for money presently due.[5] What is abundantly clear is that the

---

**4.** The legislative history of the Federal Courts Administrative Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992) indicates the importance of administrative exhaustion under the CDA:

> The amendment [codified as 28 U.S.C. § 1491(a)(2) ] does not authorize contractors to seek declaratory judgments from the Court of Federal Claims in advance of a dispute and final decision, and will not permit contractors to seek ... declaratory judgments that would interfere with the contracting officer's right to direct the manner of performance under the changes clause. A contracting officer's final decision under the Contract Disputes Act will

remain a jurisdictional prerequisite to review by the Court of Federal Claims.

138 Cong. Rec. S17798–99 (daily ed. Oct. 8, 1992) (statement of Sen. Heflin); *see also Alaska Pulp Corp. v. United States,* 38 Fed.Cl. 141 (1997).

**5.** Plaintiffs also allege that the Court has jurisdiction to entertain their claims for declaratory relief pursuant to 28 U.S.C. § 1491(a)(3). Because the language of 28 U.S.C. § 1491(a)(3), which was repealed in 1996, is similar to that of 28 U.S.C. § 1491(b)(2) ("[t]o afford relief in such an action, the court may award any relief that the court considers proper, including declaratory

CDA requires plaintiffs to assert their claim for monetary and declaratory relief to the agency before it does so in court, and that the Court's jurisdiction is triggered by the agency's final decision in response to such claim. The Court therefore declines to reach the issue of declaratory relief and dismisses for lack of subject matter jurisdiction on the ground that the CDA's requirements have not been met.

A decision to dismiss an action for lack of jurisdiction "does not present a bar to a subsequent action on the merits in a court of competent jurisdiction." *Do–Well Machine Shop, Inc. v. United States,* 870 F.2d 637, 640 (Fed.Cir.1989). The Clerk of Court is hereby ordered to dismiss plaintiffs' complaint without prejudice. Plaintiffs' Notice of Assignment pending before the Court is mooted, irrespective of whether it was properly filed. The Clerk of Court is also directed to return the Notice of Assignment to plaintiffs.

IT IS SO ORDERED.

and injunctive relief..."), the government construes plaintiffs' jurisdictional assertions as grounded in 28 U.S.C. § 1491(b), the Tucker Act provision governing bid protests. The General Accounting Office has held that NAFI's are not federal agencies for bid protest purposes. *Premi-* *er Vending,* B–256560, 94–2 CPD ¶ 8, 1994 WL 328284 (July 5, 1994). Even if the bid protest provisions of the Tucker Act did apply here, nothing in plaintiffs complaint suggests that the dispute in this case should be characterized as a bid protest.