**CLEARWATER CONSTRUCTORS, INC., (a Division of Hensel Phelps Construction Co.), Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 01–351C.**

United States Court of Federal Claims.

April 25, 2003.

---

Joseph A. Camardo, Jr., Auburn, New York, attorney of record for the plaintiff.

Lara Levinson, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., David M. Cohen, Director, and James M. Kinsella, Deputy Director, for the defendant.

## OPINION

MEROW, Senior Judge.

This matter is before the court in this contract dispute action brought pursuant to the Contract Disputes Act of 1978 ("CDA"), upon defendant's motion to dismiss a portion of plaintiff's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). One of the jurisdictional predicates to commencing an action in this court pursuant to the CDA is that the parties must demonstrate that a valid claim has been presented to the Contracting Officer ("CO") for consideration. The sole issue for the court's consideration at this time is whether a letter submitted to the CO in 1986 constituted a valid claim by the contractor and whether the subsequent response was a final decision by the CO, sufficient to trigger the time running for plaintiff to file a complaint. For the reasons stated below, defendant's motion to dismiss is granted.

## BACKGROUND

### Facts and Procedural History

The facts of this matter are undisputed. On or about February 20, 1986, plaintiff, Clearwater Constructors, Inc. ("Clearwater") and the Army Corps of Engineers ("the Corps") entered into Contract No. DACA45–86–C–0068. Pursuant to that agreement, Clearwater was to construct a "3–bay hangar" at Grand Forks Air Force Base in North Dakota. Compl. at ¶¶ 7–8. Clearwater subcontracted the work required for the fabrication and erection of the hangar doors to Fleming Steel Company, Inc. ("Fleming"). On or about May 8, 1986, the government issued Modification P00002 ("Mod.P00002") to the contract, which specifically provided that "control panels shall be explosion proof." Compl. ¶ 47; see also Def.'s Reply in Supp. of Partial Mot. to Dismiss, Attach. "A" at p. 1. Fleming sought guidance from defendant with regard to that Modification. Compl. ¶¶ 48–62; see also Def.'s Reply in Supp. of Partial Mot. to Dis-

miss, Attach. "A" at p. 2. The Corps responded that the modification was merely a clarification of contract requirements and not a change to the contract.

Sometime before the end of May 1986, a dialogue ensued and continued through August 1986, via telephone, mailgram and letter, between Clearwater, Fleming and the Corps regarding the interpretation which should be applied to Mod. P00002. Compl. ¶¶ 47–62. On or about July 14, 1986, Fleming advised the government and Clearwater that its pricing for Mod. P00002 would be $11,848.57. Compl. ¶ 58. On or about August 22, 1986, plaintiff allegedly advised Fleming that "the Corps was going to direct Fleming to furnish all electrical equipment ... [for the h]angar as explosion proof.... and that Fleming was to do the work effort without additional compensation." Compl. ¶ 62. On or about September 3, 1986, Clearwater purportedly forwarded a letter from the Corps,[1] which formally declared that certain paragraphs of Mod. P00002 were included for clarification and were not a change to the contract. Compl. ¶ 63. Accordingly, the Corps stated that those paragraphs were to be deleted from Mod. P00002. *Id.* By letter dated September 16, 1986, Fleming formally voiced its disagreement with the Corps' interpretation of the effect Mod. P00002 would have upon the contractor and subcontractor ("Fleming letter"). Specifically, Fleming stated:

> This letter is a formal protest of the Corps of Engineers' decision relating to the electrical equipment required for ... [the hangar doors.]
>
> Our interpretation of Architectural Drawing A–3 exempts the electrical equipment for the [hangar] doors from hazardous duty classification.
>
> * * * * * *

On May 8, 1986[,] Modification Proposal P00002 (months after award of contract) was issued; Item 2.10 reads "... Paragraph 3.6.1 in four places, ..." insert "except in the Fuel Cell hangar control panels shall be explosion-proof ...." Item 2.11

reads "... Paragraph 6.9.2 ... insert [']except in the Fuel Cell hangar control panels shall be explosion-proof ....[']" These insertions without further modification of the existing Specifications are not workable. We had cabled for clarification on the change order request....

* * * * * *

Mr.... of the Corps of Engineers had communicated in his July 29, 1986 letter, ... that Amendment 5, Item 3 "further specifies that the equipment ... [relative to the hangar doors] will be rated for hazardous equipment .... Since Amendment 5 covered the requirements ..., as well as Sheet A–3, we see no reason for increasing contract price to achieve explosion-proof characteristics of the hangar doors .... The explosion-proof characteristics should be provided at no additional cost to the [g]overnment."

Firstly, we would like to point out that Addendum 5 did not change in any form Drawing A–3 of the contract drawings. Secondly, Addendum 5 states ... after "hinged doors," insert "except control panels and associated wiring and devices shall be explosion-proof for hazardous areas." There are no instructions in that insertion that changes the key plan or notes on Drawing A–3. This insertion merely states that the control panels and associated wiring and devices that are *in* the hazardous areas shall be explosion-proof. However, by Drawing A–3 the hangar doors are clearly not in the hazardous area....

Lastly, we contend that the Corps of Engineers did not make their intent clear and concise in the contract drawings or [s]pecifications. This fact is backed up by the act of issuing a Modification Proposal requesting price change. It was not until the Corps of Engineers reviewed our submission on Modification Proposal P00002 that they declared unequivocably [sic] that their intent was contrary to the contract drawings. Why then was a Modification Proposal issued if, as they claim, their in-

---

1. The Corps' letter was identified as bearing serial number 86–0068–97. The court has not been provided with a copy of that letter.

tentions were clear on the contract documents.

It is our position that we should not have to suffer economically for the mistakes on the contract documents by the Architect and Corps of Engineers. It is our intention to seek reimbursement for the cost expended in complying with the Corps of Engineers['] erroneous contention that all electrical equipment on the hangar doors ... were shown as hazardous equipment in the contract drawings.

As the General Contractor for this project, we request of you submission of our protest by the contract procedures and language.

Def.'s Reply in Supp. of Partial Mot. to Dismiss, Attach. "A," p. 1–2.

On or about September 30, 1986, Clearwater submitted a cover letter to the Contracting Officer ("CO") to which it attached the Fleming letter ("Clearwater letter"). In its cover letter, Clearwater specifically stated:

 \* \* \* \* \* \*

Fleming Steel Company asserts that their interpretation of the Contract documents does not indicate Explosion Proof Electrical Equipment and Controls in [the] Hangar Bay ... as a requirement of the contract. Fleming's position is that this work is a change in scope and should be covered by a Contract Modification.

Per Fleming's request, and in accordance with Contract Clause 43, "Disputes," we herein formally request a review and decision of the ... CO as allowed for under the terms of our agreement.

Should you have any questions or require additional information, please advise.

 \* \* \* \* \* \*

Def.'s Reply in Supp. of Partial Mot. to Dismiss, Attach. "B."

On or about July 21, 1987, the CO purportedly issued a final decision and concluded that Fleming was not entitled to an equitable adjustment with regard to changes made by Mod. P00002. Compl. ¶ 67. At the end of

that decision letter, the CO included the standard appeal language. *Id.*

On or about March 14, 1996, nearly ten years after the CO's final decision, Clearwater submitted a certified claim for Equitable Adjustment, which included the costs relating to Mod. P00002. *See* Pl.'s Answer in Opp'n to Def.'s Partial Mot. to Dismiss at Ex. 1. The total amount of the claim was $672,050.64, of which the portion relevant to Mod. P00002 amounted to $29,114.12. Compl. ¶ 5; Pl.'s Answer in Opp'n to Def.'s Partial Mot. to Dismiss at Ex. 1.

In response, on or about June 15, 2000, the CO issued a final decision in which it denied Clearwater's claim in its entirety. Pl.'s Answer in Opp'n to Def.'s Partial Mot. to Dismiss at Ex. 2. Specifically, with regard to the portion of the claim relevant to Mod. P00002, the CO stated:

d. *Issue 4—Modification proposal P00002.* This portion of the claim deals with matters previously addressed in a Contracting [O]fficer's Decision issued on July 21, 1987. The claim was denied at that time, and will not be considered again in this Contracting Officer's Decision. Fleming's supplement argues that the ... [Corps] erroneously issued a Final Decision based on Fleming's letter, and that Fleming is entitled to raise the issues again. The ... [Corps] disagrees. The prime contractor, Clearwater, forwarded Fleming's letter with a cover letter that specifically requested a Contracting Officer's Decision. That decision was issued, and the matter has been concluded as far as the ... [Corps] is concerned.

Pl.'s Answer in Opp'n to Def.'s Partial Mot. to Dismiss, Ex. "2," at p. 6.

On or about June 12, 2001, Clearwater filed a complaint in this Court challenging the conclusions stated in the CO's June 15, 2000 final decision. Specifically, Clearwater requested that this court find it is entitled to recover $672,050.64, pursuant to the Changes clause of the contract, or alternatively, based upon its allegations of breach of contract. Compl. at p. 29.[2] Furthermore, Clearwater seeks interest, pursuant to the CDA, from

---

**2.** This portion of the complaint does not have enumerated paragraphs.

the date defendant received the claim until the date the claim is paid. *Id.* Plaintiff also seeks costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act and the CDA. *Id.*

The government subsequently moved, pursuant to RCFC 12(b)(1), to dismiss that portion of the complaint which the CO stated had already been addressed in the CO's July 21, 1987 decision.

## DISCUSSION

### *Jurisdiction and Standard of Review*

The inflexible requirement that jurisdiction be established as a threshold matter before proceeding to the merits of an action submitted for the court's review "spring[s] from the nature and limits of judicial power of the United States." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

As defendant correctly states, RCFC 12(b)(1) provides for dismissal of a claim for "lack of jurisdiction over the subject matter." As the plaintiff, Clearwater bears the burden of proving that this court has jurisdiction over the allegations stated in its complaint. *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998). The court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). If it appears, upon construing the allegations in the complaint favorably to the pleader, that plaintiff cannot prove any set of facts which would entitle him to relief, the complaint must be dismissed. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) (determining that plaintiff, as party who seeks to exercise jurisdiction in his favor, bears burden of establishing jurisdiction).

Clearwater's complaint will not be dismissed for lack of jurisdiction however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Emery Worldwide Airlines, Inc. v. United States,* 49 Fed.Cl. 211, 219 (2001) (*quoting Conley,* 355 U.S. at 45–46, 78 S.Ct. 99), *aff'd,* 264 F.3d 1071 (Fed.Cir.2001). In this regard, the court's focus is not upon the issue of whether a plaintiff will ultimately prevail but "whether the claimant [can demonstrate that this court has jurisdiction to resolve its disputes and therefore,] is entitled to offer evidence to support the claim." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683.

The scope of this court's jurisdiction must be narrowly construed. *Logicvision, Inc. v. United States,* 54 Fed.Cl. 549, 551 (2002) (*citing Hart v. United States,* 910 F.2d 815, 817 (Fed.Cir.1990)). Jurisdiction in this court is conferred by the Tucker Act which provides in relevant part: "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000).[3] With respect to disputes arising pursuant to the CDA, Congress has granted this court "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, *and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act."* See 28 U.S.C. § 1491(a)(2) (emphasis added); Accordingly, this court has jurisdiction to decide both monetary and non-monetary disputes. 28 U.S.C. § 1491(a)(2); *see also Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1268 (Fed.Cir.1999) (noting that open ended language in statute is not restric-

---

**3.** The 2000 version of the United States Code is relied upon unless otherwise noted.

tive with regard to types of claims that can be pursued in this court under the CDA).

Pursuant to section 6 of the CDA, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Under section 10(a)(1) of that Act, the court's jurisdiction encompasses actions filed in the appropriate forum within a specified time period triggered by the date of the receipt by the contractor of the decision of the CO[4] concerning the claim. 28 U.S.C. § 1491(a)(2); 41 U.S.C. §§ 605(a), 609(a)(3); see James M. Ellett Constr. Co., Inc. v. United States, 93 F.3d at 1537, 1541 (Fed.Cir. 1996); see also Alliant, 178 F.3d at 1269–70 (noting that prior to 1992 amendments to the Tucker Act, direct actions on monetary claim decisions could be asserted in this court, whereas appeals from non-monetary claim decisions were relegated to the Board of Contract Appeals).

### The Parties' Contentions

The parties do not dispute the timing and content of the communications exchanged between the contractor, subcontractor and the CO with regard to Mod. P00002.

Rather, the government contends that the Clearwater letter, forwarding the Fleming letter to the Corps, was a valid non-monetary claim and that the CO's July 21, 1987 response was a final decision. In the alternative, the government asserts that the series of letters Clearwater submitted to the CO with regard to Mod. P00002 must be considered together with plaintiff's July 14, 1986 cost proposal as constituting a "logical progression" which eventually amounted to a monetary claim.

Regardless of whether the claim is characterized as a non-monetary claim or as a monetary claim, the government continues, Clearwater did not timely pursue an appeal of the CO's final decision upon Mod. P00002. Therefore, the government asserts that with regard to that portion of the claim allegedly stemming from Mod. P00002, Clearwater's failure to adhere to the statutory time frames mandates dismissal due to a failure of jurisdiction, and Clearwater cannot proceed to offer evidence in support of its claim.

Clearwater opposes the government's characterization of its September 30, 1986 letter, or Fleming's September 16, 1986 letter, as a valid claim under any circumstances, regardless of whether that "claim" is described as monetary or nonmonetary. Rather, Clearwater contends that Fleming's letter was meant to be a "formal protest" of the Corps' actions and a summary of Fleming's position with respect to the essential recision of Mod. P00002. Clearwater argues that its September 30, 1986 letter cannot, however, be considered a non-monetary demand for declaratory relief because, in its view, neither letter conveyed an assertion of entitlement for relief. Rather, the letters allegedly explain the contractor's (and subcontractor's) disagreement with the government's interpretation and express Clearwater's opinion that the alleged extra contractual work required by the government should be covered by a future modification to the contract, to which the contractor intended to subsequently file a monetary claim. Alternatively, Clearwater contends that its letter conflicts with Fleming's letter and therefore, the CO was not presented with a clear and unequivocal statement as to the basis of the alleged entitlement.

Furthermore, to the extent that the government alleges that plaintiff has made out a monetary claim, Clearwater asserts that it did not provide the CO with any of the required indicia of a valid claim. Specifically, plaintiff contends that neither Clearwater nor Fleming submitted a "sum certain," pricing information, a certification, or a request for the CO's final decision.

---

4. In certain circumstances a deemed denial is appropriate. 41 U.S.C. § 605(c)(5) ("Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter"); see also Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1269 (Fed.Cir.2001) ("The Corps failed to issue a final decision on Randa's claim, resulting in a deemed denial of the claim").

Accordingly, based upon Clearwater's argument that it did not submit a valid claim to the CO, plaintiff contends that the CO's July 21, 1987 final decision was improper and did not trigger the time period within which plaintiff might appeal. Rather, Clearwater asserts that the only valid claim it submitted to the CO was dated March 14, 1996, and that the time period for appealing the CO's decision did not end until one year after the date of the CO's final decision, issued on June 15, 2000. Because Clearwater's complaint was filed on June 12, 2001, plaintiff asserts the court has jurisdiction to review that portion of the claim with respect to Mod. P00002.

### Analysis

*1. Validity of September 1986 Letter(s) as Non–Monetary Claim(s)*

 In the absence of a statutory definition of what constitutes a "claim" for purposes of the CDA, the Federal Acquisition Regulation ("FAR") defines that term as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract.

48 C.F.R. § 33.201;[5] *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1576 (Fed.Cir.1995). Additionally, claims must be submitted to the CO for a decision. *Rex Sys. Inc. v. Cohen,* 224 F.3d 1367, 1371–72 (Fed.Cir.2000); *Ellett,* 93 F.3d at 1543; *see also Kanag'Iq Constr. Co. v. United States,* 51 Fed.Cl. 38, 43 (2001). To state a non-monetary claim there is no requirement that the contractor make a request for a sum certain. *GPA–I, LP v. United States,* 46 Fed.Cl. 762, 766 (2000). Accordingly, the contractor is required to satisfy just two requirements to set forth a non-monetary claim: (*i*) the contractor must make a "written demand . . . seeking as a matter of right . . . the adjustment or interpretation of contract terms;" and (*ii*) that request must be submitted to the CO for a decision. *Id.* at 767.

*i.*

 A statement of a claim pursuant to the CDA does not depend upon any particular language or conformity to any specific format. *Transamerica Ins. Corp., Inc. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir. 1992), *overruled in part on other grounds by Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1579 & n. 10 (Fed.Cir.1995); *Medina Constr., Ltd. v. United States,* 43 Fed.Cl. 537, 550 (1999); *see also Kanag'Iq,* 51 Fed.Cl. at 43–44. Instead, "the intent of the 'claim' governs." *Transamerica,* 973 F.2d at 1576; *Contract Cleaning Maint., Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987); *Kanag'Iq,* 51 Fed.Cl. at 44. The contractor need only submit a clear and unequivocal statement that gives the CO adequate notice of the basis and amount of the claim. *Contract Cleaning Maint.,* 811 F.2d at 592; *Medina,* 43 Fed.Cl. at 550. In certain circumstances, even "a series of letters can be read together to comprise a clear and unequivocal statement giving the CO notice of the basis for the contractor's claim." *Kalamazoo Contractors, Inc. v. United States,* 37 Fed.Cl. 362, 368 (1997) (citation omitted); *see also Contract Cleaning Maint.,* 811 F.2d at 592; *GPA–I, LP,* 46 Fed.Cl. at 767.

 In support of its assertion that the Clearwater letter, and the accompanying Fleming letter, meet the necessary criteria to be a non-monetary claim, the government first focuses upon that portion of the regulatory definition of a claim which states that a contractor's written demand must seek "as a matter of right . . . interpretation of a contract term." *See* FAR § 33.201. Specifically, the government states that because Clearwater requested that the CO provide an interpretation of the contract terms on its subcontractor's behalf, the two letters together constituted a non-monetary claim pursuant to 41 U.S.C. § 605(a) and FAR § 33.201.

In opposition, and in reliance upon *GPA–I, LP,* 46 Fed.Cl. at 766, Clearwater argues that in order for a demand for an interpretation of contract terms to be considered a

---

**5.** For convenience with regard to citations to the FAR, the full citation in the Code of Federal Regulations shall be replaced with a reference to the FAR (*e.g.* 48 C.F.R. § 33.201 shall be referred to as FAR § 33.201).

claim under the CDA, the contractor must "specifically assert entitlement ... [to the declaratory relief sought] by asserting specific contractual and legal grounds for its interpretation [of the contract.]" Pl.'s Resp. in Opp'n to Def.'s Reply in Supp. of Partial Mot. to Dismiss at 2; *GPA–I, LP*, 46 Fed.Cl. at 766. In this regard, Clearwater asserts that the Fleming letter merely put the Corps on notice of its intention to file a monetary claim and did not request further consideration of the Corps' position. This argument is unpersuasive.

In *GPA–I, LP*, the government had entered into two leases with plaintiff for office space, parking and other amenities. *GPA–I, LP*, 46 Fed.Cl. at 764. The parties later disputed the meaning of the clause regarding rental payment due dates. *Id.* After a conversation regarding the lease disputes, the CO asked plaintiffs to make their claims in writing and stated that he would then provide a final decision. *Id.* at 765. Ultimately, the CO issued a decision interpreting the lease as allowing the government to make its lease payments within thirty days of the first workday of each successive month (*i.e.* making the May rent due within thirty days of the first workday of June). *Id.* Even after this decision, plaintiff continued to assert that the lease required defendant to pay rent within the first workday of each rental month (*i.e.* making the June rent due within thirty days of the first workday of May). *Id.* The court based its statement of the standard for ascertaining this court's jurisdiction, over the non-monetary claims seeking interpretation of the lease clauses, upon *Alliant*, 178 F.3d at 1265; *GPA–I, LP*, 46 Fed.Cl. at 766.

In *Alliant*, the Federal Circuit explained that in order to establish that a contractor's claim is asserted "as a matter of right" pursuant to the regulatory definition of a "claim," the contractor must specifically assert entitlement to the relief sought. *Alliant*, 178 F.3d at 1265. To meet this requirement, "the claim must be a demand for something due or believed to be due rather than, for example a cost proposal for work the government later decides it would like performed." *Id.* (*citations omitted*). It was concluded that the contractor in *Alliant* had met that

requirement by providing the government with a letter asserting specific contractual and legal grounds for its interpretation. *Id.* The Federal Circuit did not hold, as the court suggested in *GPA–I, LP*, that in order to specifically assert entitlement to declaratory relief, a contractor must "assert specific contractual and legal grounds for its interpretation." *GPA–I, LP*, 46 Fed.Cl. at 766. Rather, the Federal Circuit stated that the letter the contractor in *Alliant* had provided to the CO which stated factual and legal grounds for the relief sought, was an acceptable means of specifically asserting entitlement to the relief sought by making a demand for something due or believed to be due. *Alliant*, 178 F.3d at 1265.

Moreover, based upon evidence similar to that found adequate to state a non-monetary claim in *Alliant*, the *GPA–I, LP* court found that the contractor had stated a non-monetary claim by stating a claim (1) requesting an explanation for the allegedly late payments; (2) requesting that the CO address the issue; and (3) by asserting specific contractual grounds for its interpretation of the "payment due-date-clause." *GPA–I, LP*, 46 Fed.Cl. at 767. Although the evidence in *GPA–I, LP* was similar to that relied upon in *Alliant*, there is no basis for limiting the broadly stated elements of proof required for stating a claim, as set forth in *Alliant*, in the manner suggested by GPA–I, LP. *See e.g., Contract Cleaning Maint.*, 811 F.2d at 592 ("[w]e know of no requirement in the ... [CDA] that a 'claim' must be submitted in any particular form or use any particular wording").

The requirements set forth in *Alliant* for establishing a non-monetary claim are met by reading the 1986 letters together. In that correspondence, Fleming stated that pursuant to its interpretation of the contract's architectural drawings, the electrical equipment on the hangar doors should be exempted from hazardous classification. Def.'s Final Reply in Supp. of Partial Motion to Dismiss, Attach. "A" at p. 1. Specifically, Fleming noted that it understood that the control panels in hazardous areas were to be explosion-proof, but that the contract drawings as supplemented by a document identi-

fied as "Addendum 5," showed that the hangar doors at issue were not in a hazardous area and therefore, Fleming asserted, were not required to be explosion-proof. *Id.* at p. 2. In closing, Fleming expressly stated that it intended to seek reimbursement for costs resulting from the requirement that the hangar doors be made explosion proof, and opined that it "should not have to suffer economically for the mistakes on the contract documents by the Architect and Corps of Engineers." *Id.* Clearwater summarized Fleming's view and state that the work described in Mod. P00002 represented "a change in scope and should be covered by a contract modification." Def.'s Final Reply in Supp. of Partial Motion to Dismiss, Attach. "A."

In sum, Fleming and Clearwater clearly offered a precise and well-explained rationale, founded both upon the facts of this matter and the language of the contract and contract modification, setting forth the reasons for its interpretation of the contract. This recitation included an extensive and detailed explanation of Fleming's "interpretation of Architectural Drawing A–3." *Id.* at 1–3. In addition, the subcontractor discussed the effect Mod. P00002 would have upon the costs to complete the contract, and pointed out, with specificity, the issues upon which it conflicted with the government's interpretation. Accordingly, the letters submitted to the CO clearly stated both factual and contractual grounds for its position, which is an acceptable means of specifically asserting entitlement to the relief sought by making a demand for something due or believed to be due. *See Alliant,* 178 F.3d at 1265; *see also GPA–I, LP,* 46 Fed.Cl. at 767.

Clearwater unpersuasively asserts that its letter somehow conflicts with that submitted by Fleming and therefore that the CO was not presented with a clear and unequivocal statement as to the basis of its alleged entitlement. Not only has Clearwater failed to explain which provisions of the two letters are in conflict, but the substance of the alleged conflict is not apparent based upon the evidence submitted. Rather, Clearwater's letter summarized the specific reasons set forth in the Fleming letter detailing its differences with the government's position upon Mod. P00002. It would be illogical to find that a reasonable contractor and subcontractor could have intended the specific and succinct description of the problem submitted to the CO in this case to have been anything other than a clear and unequivocal statement of the disagreement with the government's interpretation of Mod. P00002. *See Contract Cleaning Maint.,* 811 F.2d at 592.

Accordingly, it is concluded that, for purposes of the CDA, by reading the Clearwater letter in conjunction with the Fleming letter, a clear and unequivocal statement of plaintiff's disagreement with the government's interpretation of Mod. P00002 is embodied in the contractor's (and subcontractor's) "written demand" seeking, as a matter of right, interpretation of that contract modification.

*ii.*

In addition to submission of a formal, written claim to the CO, a final decision by the CO is also a jurisdictional prerequisite to maintaining a suit in this court. *See Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1578–79 (Fed.Cir.1994); *Made in the USA Found. v. United States,* 51 Fed.Cl. 252, 255–56 (2001); *Newport News Shipbuilding and Dry Dock Co. v. United States,* 44 Fed.Cl. 613, 615 (1999).

Notwithstanding plaintiff's protestations that the 1986 letters merely demonstrated an intent to file a future claim in this matter, Fleming expressly requested, in its September 16, 1986 letter, that Clearwater "submi[t] . . . [its] protest by the contract procedures and language." Def.'s Final Reply in Supp. of Partial Motion to Dismiss, Attach. "A" at p. 3. Clearwater, strengthened Fleming's request, on September 30, 1986, by "formally request[ing] a review and decision of the . . . [CO] as allowed for under the terms of our agreement." Def.'s Final Reply in Supp. of Partial Motion to Dismiss, Attach. "B." It is not clear whether a contractor can avoid a finding that the contractor's submissions requested a final decision by expressing a desire to settle or negotiate the dispute, or meet with the government to further discuss the matter. *Transamerica,* 973 F.2d at 1577–79, *Contract Cleaning Maint.,* 811 F.2d at 592; *Kanag'Iq,* 51 Fed.Cl. at 44. Never-

theless, neither Clearwater nor Fleming made any such attempt to prevent the CO from making a final decision in response to the 1986 letters. Rather, their letters indicated the conclusion, not the continuation of a lengthy discussion with regard to the appropriate interpretation to be afforded Mod. P00002. Both letters are precise and obviously drafted with care. By applying a "common sense" standard to this court's analysis of the documents submitted to the CO and the language with which the parties chose to express themselves, the contractor communicated a desire for a CO's decision. *Transamerica*, 973 F.2d at 1577–79; *Kanag'Iq*, 51 Fed.Cl. at 44.

Because the September 30, 1986 claim was submitted in writing, and sought, as a matter of right, not only an interpretation by the CO of the contract terms, but also a final decision as to the correct meaning of Mod. P00002, it is concluded that Clearwater submitted a valid non-monetary claim pursuant to the CDA at that time. *See GPA–I, LP*, 46 Fed.Cl. at 767.

Moreover, the CO understood the parties' request and on July 21, 1987, provided a final decision including the boilerplate language regarding the contractors' appellate rights. Compl. ¶ 67; *see e.g., Alliant*, 178 F.3d at 1267 (noting that even in absence of boilerplate language CO's decision could be characterized as final if that was the intent of the parties); *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed.Cir.1990) (same). Additionally, the contractors themselves treated the July 21, 1987 letter as a final decision by apparently ceasing all discussion on the matter and proceeding in accordance with the CO's direction. *Alliant*, 178 F.3d at 1268 (noting that if decision were

characterized non-final, contractor would not be required to obey CO's directive without further discussions).

In 1987, this court did not possess jurisdiction to review a final decision upon a claim seeking interpretation of contract terms and the appropriate avenue to appeal the CO's decision was to the board of contract appeals.[6] 41 U.S.C. §§ 606, 607(d), 609 (1982) (current version at 41 U.S.C. §§ 606; 607(d), 609 (2000)); *Overall Roofing & Constr. Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir. 1991), *superceded by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992). In order to timely comply with the jurisdictional requirements of the CDA, Clearwater must have filed its appeal to the board within ninety days of the CO's final decision. It is undisputed that Clearwater did not do so and therefore this court is without jurisdiction to decide the issues relative to the claim presented to the CO on September 30, 1986. *See e.g., Petroleum Constr., Inc.*, DOTCAB No. 2533, 2533, 1993 WL 18821 at *4, 93–2 B.C.A. ¶ 25,760, 25760, (D.O.T.C.A.B. Jan 25, 1993) (discussing appeals process following CO's final decision prior to passage of Federal Courts Administration Act of 1992); *Allied Production Management, Inc.*, DOTCAB No. 2466, 2466, 1991 WL 258345 at *1, 92–1 B.C.A. ¶ 24,585, 24585 (D.O.T.C.A.B. Nov.15, 1991).

### 2. Validity of September 1986 Letter(s) as Monetary Claim(s)

Because there was a valid non-monetary claim presented to the CO and a valid CO's final decision in this case, the court need not reach defendant's alternative assertion that Clearwater had stated a valid monetary claim.[7] Nevertheless, even if the court were

---

**6.** In 1992, Congress expanded this court's jurisdiction to include non-monetary disputes. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992); *Garrett v. General Electric Company*, 987 F.2d 747, 750 (Fed.Cir.1993).

**7.** It is noted, that had the contractor stated a monetary claim, the legal precedents in effect in 1987 would have allowed the contractor twelve months within which to file a complaint in the Court of Federal Claims. *See* 41 U.S.C. § 609(a)(3) (1987). This issue is not relevant in this matter however, because plaintiff did not

commence any action at all within the twelve months after the CO's 1987 decision. The evidence shows that after receiving the CO's decision, the matter was apparently not addressed again until March 14, 1996, when Clearwater submitted, for a second time, its claim with regard to Mod. P00002. On or about June 15, 2000, The CO indicated his refusal to render a second decision upon the same subject matter. *See Sharman Co. v. United States*, 2 F.3d 1564, 1571 (Fed.Cir.1993) (determining that CO does not have authority to issue a subsequent claim based on the same operative facts as an earlier

 

to review that allegation, the evidence presented is insufficient to formulate an opinion as to whether a monetary claim was established.

Based upon the foregoing, two of the three elements for stating a monetary claim pursuant to the CDA have been met. Specifically, Clearwater made a written demand, clearly and unequivocally stating the basis for its claim, and that claim was presented to the CO. In order to state a monetary claim, the only additional item Clearwater need establish is that its claim contained a statement of a "sum certain." *Ellett*, 93 F.3d at 1542. In this case, however, the court would not be able to render a determination because the parties have not presented sufficient facts upon which to formulate an opinion as to whether the statements of price presented in the July 14, 1987 cost proposal were sufficient to establish that a "sum certain" was properly presented to the CO. *See e.g., Pevar Co. v. United States,* 32 Fed.Cl. 822, 825 (1995) (determining that amount submitted was too speculative to be a "sum certain").

### CONCLUSION

Clearwater's September 30, 1986 letter, and the accompanying September 16, 1986 letter authored by Fleming, together constituted a valid non-monetary claim for purposes of the CDA. In the absence of evidence that a complaint was timely filed in the appropriate forum, it is concluded that this court is without jurisdiction to address that portion of the complaint regarding facts presented to the CO in the September 30, 1986 claim.

Accordingly it is **ORDERED** that:

(1) Defendant's Partial Motion to Dismiss those matters which the CO reviewed in conjunction with the 1986 claim and which were the subject of the CO's July 21, 1987 final decision, is **GRANTED**;

(2) Each party shall bear its own costs;

claim currently in litigation), *overruled in part on other grounds by Reflectone, Inc. v. Dalton,* 60 F.3d 1572 (Fed.Cir.1995).

1. This order was originally issued and filed under seal on July 31, 2002. The parties were directed to advise the court regarding any portions of the record that should remain underseal.

(3) The parties shall comply with the procedures for filing the Answer to the Complaint set forth in the Order filed November 15, 2001.